# ENGEN v. RAMBLER COPPER AND PLATIUM COMPANY.

## (No. 667.)

Appeal and Error—Pleading—Reply—Waiver—Record—Supply-
ing Omissions—Affidavits—Master and Servant—Injury to
Servant in Mine—Evidence—Admissibility—Question For
Jury—Fellow Servants—Positive Duties of Master—Negli-
gence in Performing—Liability—Mines—Hoisting Engineer—
Relation to Other Employes—Relation to Miners Being Low-
ered to Places of Work—Competency—Duty of Employer—
Directing Verdict—Defective Machinery—Inspection—Employ-
er's Duty—Contriburory Negligence—Act of God—Admission
of Incompetent Evidence, Effect Upon Review When Verdict
Directed.

1. After a contest on the merits, as if new matter in the
   answer were denied, the want of a reply will be deemed
   waived, or the reply will be presumed to have been lost.

2. Where a suggestion of a diminution of the record was made
   by counsel for plaintiff in error, no reply to new matter
   in the answer appearing in the record, it was *held* that cer-
   tain affidavits of the clerk of the district court and one of
   the attorneys for plaintiff in error relating to the filing of
   a reply and its absence from the district court files were
   sufficient to show that a reply had been filed and was lost,
   and that a copy authenticated by the said attorney's af-
   fidavit should be permitted to be filed as part of the rec-
   ord and considered as the reply.

3. In an action by one who was employed in a mine for per-
   sonal injuries alleged to have been caused by a defect in
   the hoisting machinery controlling the movements of a
   cage in which the workmen were lowered to their places
   of work in the mine, the law does not require that the
   inquiry concerning the alleged defect be confined to the
   day of the accident, but evidence of the condition some
   time prior thereto (six months in this case) and down
   to the time of the accident is competent and admissible
   for the purpose of showing actual or constructive notice
   of the defect on the part of the defendant.

4. In an action by a miner for personal injuries suffered
   through the sudden falling down the mine shaft of a
   cage in which he was being lowered to his place of work,
   it was alleged that the defendant had negligently allowed

certain pipes and a certain valve connected with the hoisting machinery to get out of repair, so that the same leaked, and that the moisture therefrom during the night before plaintiff's injury was negligently allowed to accumulate upon and about the machinery and form frost and ice thereon, rendering the same unsafe and unfit for service; that the brake used to control the movement of the cage thereby became useless, causing it to drop down the shaft with great velocity and resulting in plaintiff's injuries. *Held,* that it was competent for plaintiff to show the condition of the machinery six months prior to the accident, under an offer to show the condition then and before that time and also after the accident, for the purpose of showing that it was in the same condition, the plaintiff having testified that immediately after the accident the hoistman and mine superintendent stated to him that it was caused by ice on the brake resulting from a leaky pipe above the hoist. Such evidence was competent to show the leaky condition of the valve on the day of the accident in connection with the said statements made to the plaintiff, and might be important as identifying the leaky pipe referred to by such statements, and was also admissible to show notice on the part of the defendant of the alleged defect. (2). Error in excluding such evidence was not cured by the fact that afterwards a former superintendent testified on cross-examination that when he was there he had no trouble with the valve leaking.

Whether or not injuries to a miner were caused by his own negligence in selecting a cage controlled by hoisting machinery in descending to his place of work in the mine, instead of going down the manway or ladders that had been provided by the employer, where the injuries were caused by the sudden dropping of the cage to the bottom of the shaft, *held,* under the evidence to have been a question for the jury, in an action brought for such injuries, and that, as a matter of law, it could not be held that in using the cage the plaintiff was negligent; it appearing that the miners and other workmen customarily descended by the cage, and there was evidence tending strongly to show defendant's knowledge of the custom, and that it permitted the same, without objection, for such a time as to justify a belief that it had assented thereto, and it further appearing that there was no order or rule either requiring the workmen to use the cage or directing them not to do so.

6. In the absence of a statute providing otherwise, an employer is not liable in an action for damages for an injury to an employe caused by the negligence of a mere fellow servant; but there are certain duties personal to the employer which cannot be delegated, so that if the servant charged with the performance of those duties fails to perform or negligently performs them the employer cannot escape liability on the ground that such negligent servant was a fellow servant of the one injured.

7. It is the duty of an employer in the performance of his non-delegable duties to exercise ordinary or reasonable care, or the care and skill that a man of ordinary prudence would observe under the circumstances.

8. It is the duty of an employer to exercise reasonable care in the following particulars, among others: (1) To furnish his employes with reasonably safe machinery, appliances, tools, and place to work, and to keep the same in reasonably safe repair. (2) To employ competent and sufficient employes with whom to work. (3) To establish and enforce reasonable rules for the safe conduct and regulation of his business. For the negligent performance of any of these duties, or the negligent failure to perform them, the employer is liable whenever it appears that such negligence, whether alone or concurrently with the negligence of one for whose conduct the employer would not be answerable, is a proximate or efficient cause of the injury complained of.

9. The duty of providing and maintaining a reasonably safe place in which to work and reasonably safe machinery and appliances requires reasonable inspection and tests; and the duty of the employer to guard his workmen against unnecessary and unreasonable risks extends, not only to those that are known to him, but also to such as a reasonably prudent man, in the exercise of ordinary diligence, would know or discover, having regard to the danger to be avoided. But there is a distinction between defects or dangers which arise in the progress of the work and constitute a part of its details and risks, and those which do not; if the defect belongs to the former class, the employer is not liable.

10. Where, in relation to a non-delegable duty of the employer, the duty of inspection exists, the one selected or employed to perform it represents the employer, so that his negligence in performing or failing to perform is the negligence of the employer.

11. That which determines whether a negligent employe is a fellow servant of the one injured or a vice principal is not his grade or rank, but the character of the act or service.

12. In the absence of a statute providing otherwise, a hoistman or hoisting engineer at a mine, in lowering men to their work in the mine, is their fellow servant, where it does not appear that his negligence causing the injury complained of occurred in the performance or failure to perform a positive duty of the employer.

13. For the negligence of a hoistman at a mine in lowering men to their work in the mine, if found to be a fellow servant of the one injured under the rule above stated, the employer is not liable, unless it be shown that the hoistman was incompetent, that the employer negligently employed him or retained him in its employ as hoistman, and that his unfitness for the position was the proximate or efficient cause of the injury.

14. It is the duty of an employer engaged in operating a mine to exercise reasonable care in selecting a competent hoistman, where it is the latter's duty to lower men to their places of work in the mine, and one not habitually addicted to the use of intoxicating liquors, so that if the employer's negligence in that particular causes an injury to another employe, not himself at fault, the employer will be liable.

15. By reason of the statute prohibiting the employment of any person as a hoisting engineer who is addicted to the use of intoxicating liquors, if not otherwise, it was the duty of an employer engaged in operating a mine to make or cause to be made reasonable inquiries concerning the habits of one who was employed as hoistman, as to the use of intoxicating liquors, and a failure to do so would constitute negligence; and in an action for an injury to a miner occurring through the falling of the cage in which he was being lowered to his place of work, *held*, that the evidence as to the hoistman's competency and the negligence in employing him should have been submitted to the jury with all the other evidence for their determination as to the proximate cause of the injury, although reasonably considered it might be doubted whether the hoistman's incompetency, if he was incompetent, caused the injury, since a peremptory instruction for the defendant which was given could not be sustained on the theory that the evidence justified the trial court in declaring, as a matter

of law, that the proximate cause of the injury was solely the negligence of a fellow servant.

16. The existence of the relation of fellow servants is a question of law, where all the facts relating to the matter are conceded or undisputed, and all reasonable minds must draw the same conclusion therefrom, but where the evidence is not thus conclusive, or the facts are disputed, the question is at least a mixed question of law and fact, to be determined by the jury under proper instructions.

17. *Held,* that upon the pleadings and the evidence, in an action for an injury to a miner caused by the falling of the cage in which he was being lowered to his place of work in the mine, that the question was presented whether the hoistman was charged with and was negligent concerning the performance of a positive duty of the employer, defendant in the action, as well as the question whether the employer was negligent respecting the duty to provide reasonably safe machinery, including the duty of reasonable inspection, and to adopt and enforce reasonable rules for its operation.

18. *Held,* upon the evidence that whether an alleged defect in the hoisting machinery at a mine could have been discovered upon a reasonable examination, and whether such examination should have been made, were at least mixed questions of law and fact, if not questions of fact alone, to be properly submitted to the jury; and it should have been left to the jury to determine whether the negligence, if any, that caused the injury complained of was the negligence of a mere fellow servant, or that of the defendant employer respecting his duty to provide and maintain reasonably safe machinery, instead of peremptorily instructing for the defendant.

19. Where it was alleged that a leak in a valve connected with hoisting machinery at a mine resulted in an injury complained of in an action for damages for such injury by a miner against the employer, *held,* that it would have been the duty of the defendant to repair the leak, if dangerous, unless it had occurred in the progress and as one of the details of the work of operating the hoist or machinery, and to be attended to as part of that work, and that the failure to do so after notice of the defect, or under circumstances sufficient to charge the defendant with notice, would be negligence.

20. It not appearing that it was any part of the duty of one injured while being lowered to his place of work in a mine

through an alleged defect in the hoisting machinery, to inspect such machinery; *held,* in an action for such injury, that taking the case from the jury by a peremptory instruction for the defendant was not justified by the evidence on the ground that the plaintiff ought to have known of the alleged defect that may have caused the accident, or that he was himself negligent.

21. If any intervening human agency contributed to cause an injury for which an action is brought, the injury cannot be considered as caused by an act of God.

22. It being alleged in an action for an injury occurring to a miner when being lowered in a cage to his place of work in the mine, that the injury was caused by ice on the brake of the hoist which allowed the cage when started to drop suddenly and with great velocity to the bottom of the shaft; that the ice was formed by the freezing of water falling upon the brake from a leak in a pipe or valve connected with the hoisting machinery; and that the defendant employer was negligent in not keeping the machinery in proper repair; and in employing an incompetent hoistman; *held,* that the fact that the water on the brake froze because the night before the accident was cold would not exempt the defendant from liability, if it should be found that the negligence of the defendant in failing to repair a defect, the existence of which it knew or ought to have known by the exercise of reasonable care, or in failing to inspect, or in any other particular within the allegations of the petition, was a proximate cause of the injury.

ON PETITION FOR REHEARING.

23. Where, in an action for personal injuries against an employer, evidence was admitted over defendant's objection showing statements by the defendant's superintendent and another who had charge of the machinery in the operation of which the accident occurred, made to the plaintiff immediately after the accident explaining the cause thereof, and tending to show that it was caused by a defect in the machinery; *held,* on error from a judgment rendered in defendant's favor upon a directed verdict, that in disposing of the case and the question whether the peremptory instruction was proper, it is at least doubtful whether it would be proper to exclude the statements aforesaid from consideration, even if found to have been improperly admitted, since to do so would prevent the plaintiff from furnishing other evidence on the subject, if available, and which might have been done had the state-

ments testified to been excluded at the trial; and *held,* further, that there being other prejudicial errors in the case, and other facts whìch required the cause to be submitted to the jury, rendering the peremptory instruction improper and erroneous disregarding the evidence as to the statements aforesaid, it was unnecessary to decide the question as to the advisibility of such evidence.

[Decided March 15, 1912.]                (121 Pac., 867.)
[Rehearing denied May 6, 1912.]          (123 Pac., 413.)

ERROR to the District Court, Albany County; HON. CHARLES E. CARPENTER, Judge.

Action by Erling J. Engen against the Rambler Copper and Platinum Company, a corporation, for damages for personal injuries received while employed in the defendant's mine. A verdict was directed in favor of the defendant, and judgment was rendered thereon. The plaintiff prosecuted error. The material facts are stated in the opinion.

*M. C. Brown* and *C. P. Arnold,* for plaintiff in error.

The motion of defendant for an instructed verdict in its favor was based upon the theory that the proximate cause of the injuries received by the plaintiff was the negligence of an alleged incompetent fellow servant of the plaintiff, and that plaintiff's evidence fails to show that said fellow servant was incompetent, or that the defendant knew of any incompetency of such servant or that there was any defect in the machinery. It is here contended on behalf of the plaintiff that there was sufficient evidence to be submitted to the jury concerning the lack of care exercised by the defendant in the selection of the hoistman who allowed the cage containing the plaintiff and other workmen to drop down the shaft of the mine.

The plaintiff claimed that the company was negligent in that it had not provided proper appliances to lower its workmen down the shaft, that the accident was caused by machinery which had been improperly installed and carelessly maintained. The court refused to allow the plaintiff to show what the condition of the machinery was at any time

prior to the date of the accident or after that time and confined the proof as to such condition to the day of the accident. This was error. (Shea v. Pac. Power Co., (Cal.) 79 Pac. 373; 2 Ency. Ev. 924.) The court erroneously held that the hoistman who was entrusted with the machinery and the responsibility of keeping it in repair, and who allowed a leaking valve to drop water upon the brake so that ice was formed thereon, and allowed the plaintiff and other workmen to step on the cage and drop down the shaft was a fellow servant of the plaintiff. They were not engaged in a common employment. The work of one lay above the ground, that of the other underground. It was the employer's duty to exercise a reasonable degree of care in lowering the plaintiff to his place of work. It was his business and duty to know that there was a leaking valve in the machinery. The evidence shows that he did know it. If he selected one to inspect the machinery and keep it in repair the carelessness of the one so selected was the employer's carelessness. The employer was liable for failure to either inspect or to provide for inspection. This question of primary obligation of the employer does not depend upon the grade of the servant selected to perform, but by the act performed. The plaintiff had nothing to do with selecting the method of going to his place of work. The machinery provided by the company for that purpose was not under his control.

The duty which devolved upon the defendant to furnish the plaintiff with a safe place to work could not be delegated so as to relieve it from liability on the ground that the negligence was the act of a fellow servant. (Kankola v. Mining Co., (Mich.) 124 N. W. 596; Baldwin on Personal Injuries (2nd Ed.) 386.) The rule is illustrated in the case of platforms, scaffolds, runways and the like, and it is held that where the appliance is furnished by the employer as a completed instrumentality for the use of the employes who are to work thereon, the fellow servant rule does not apply. (Lumber Co. v. Ligas, 172 Ill. 315, 50

N. E. 225, 64 Am. St. 38; 26 Cyc. 1332, 1333.) The cases which hold that if the master exercises due care in selecting a competent servant to inspect and repair such servant is a mere fellow servant while in the performance of that duty are opposed to the clear weight of authority. The master's duty to furnish reasonably safe machinery and appliances is a continuing one requiring him to provide for the inspection and repair thereof. (26 Cyc. 1332; 12 Ency. L. (2nd Ed.) 956, 958; Shea v. Pac. Power Co., supra; Skelton v. Lumber Co., 140 Cal. 507, 70 Pac. 13; Odin Coal Co. v. Tadlock, 216 Ill. 624; R. Co. v. Kneirin, 152 Ill. 458; Tudor Iron Works v. Weber, 31 Ill. App. 306, 129 Ill. 525; Roux v. Lumber Co., 94 Mich. 607, 54 N. W. 492; Sadowski v. Car Co., 84 Mich. 100, 47 N. W. 598; Ford v. R. Co., 110 Mass. 240; R. Co. v. Herbert, 116 U. S. 653; Van Dusen v. Letellier, 78 Mich. 492, 44 N. W. 572; Trihay v. Min. Co., 4 Utah, 468, 11 Pac. 612; Schultz v. R. Co., 48 Wis. 375, 4 N. W. 399.) The mere fact that it would have been safer for workmen to use ladders instead of the hoist by reason of a defect not apparent to the eye does not make them negligent as a matter of law in using the hoist. (Boyle v. Columbian F. Co., 182 Mass. 93, 64 N. E. 726; Spring Valley Coal Co. v. Buzis, 115 Ill. App. 196, 72 N. E. 1060; Sullivan v. Foundry Co., (Mass.) 93 N. E. 576.) Where an elevator is customarily used by persons accompanying freight, they do not assume the dangers arising from the negligence of the owner. (Orcolt v. Bldg. Co., 201 Mo. 424, 99 S. W. 1062.) An employer controlling the operation of an elevator used by employes is required to exercise great care and caution, both in construction and operation, so as to render it as free from danger as careful foresight and reason may reasonably dictate. (16 Cyc. 1117; Wise v. Ackerman, 76 Md. 375, 25 Atl. 424; Frolich v. Cranker, 11 O. C. C. 592; McDonough v. Lanpher, 55 Minn. 501, 27 N. W. 152, 43 Am. St. 541.) It is the master's duty to exercise ordinary and reasonable care and diligence to discover and correct any

deficiency that may arise in an elevator from use or the lapse of time. (Wilson v. Wooden Ware Co., 116 N. W. 198.) A servant does not assume a risk unless he knows it, or the circumstances are such that in the exercise of ordinary care he ought to know it. (Gierczac v. N. W. Fuel Co., 142 Wis. 207.) From the mere fall of a timber constituting part of a building or structure, if in a place in which employes are to work, there arises a reasonable inference that the owner, the employer, has failed in his duty either to make it safe, or to exercise reasonable care to keep it safe. (Lepsky v. Coal Co., 136 Wis. 307.) Where heavy timbers are being handled in the winter season, the fact that they are so exposed as to be covered with ice and snow, and when handled might slip and injure the servant, should be reasonably anticipated by the master or his foreman in charge. (Harsen v. R. Co., 139 Wis. 186.) An agent entrusted with maintaining safe machinery is not a fellow servant of other employes. (10 Ency. L. 958; Corcoran v. Holbrook, 59 N. Y. 517.)

In the case at bar it appears that the pipes around the hoist were so carelessly arranged that a valve was above the brake, and water from the valve would fall upon the brake. The night before the accident was cold. The valve leaked which resulted in ice upon the brake. It was clearly error under these circumstances to hold that the fellow servant doctrine applied. If a reasonable rule had been adopted for testing the machinery of the hoist and cage before the men went to work, the accident could not have happened. A rule for so testing the machinery and cage would have been proper and reasonable. This is disclosed by the evidence. No such rule was adopted, and on this ground alone it was error to give the peremptory instruction. (Johnson v. Coal Co., 28 Utah, 46, 76 Pac. 1089; Barrows on Neg., sec. 40.) Failure to adopt such reasonable rule was negligence on the part of the employer. (Wood on Master's Liability, sec. 403; Eastwood v. Min. Co., 86 Hun, 91; Mather v. Rillston, 156 U. S. 391.) Whether such a rule ought to have

been adopted was a question of fact for the jury. (2 Brickwood's Sackett on Inst. 296.) Such duty could not be delegated. (26 Cyc. 1340.) The verdict having been directed the appellant is entitled not only to the most favorable inferences from the evidence, but all the disputed facts are to be considered as established in his favor. (Koehler v. N. Y. Steam Co., (N. Y.) 75 N. E. 538.) A directed verdict is erroneous when a material question of fact arises upon the evidence for the jury to determine. (Riner v. Ins. Co., 9 Wyo. 81; Kahn v. Ins. Co., 4 Wyo. 419; Boswell v. Bank, 16 Wyo. 202.)

*H. V. S. Groesbeck,* for defendant in error.

No reply was filed to the affirmative defenses which were retained in the answer, and therefore every allegation of such new matter in the answer must be taken as true. It is only after a contest on the merits, as if new matter were denied, that the want of reply will be waived. No presumption arises of a trial as if a reply was filed unless there is something in the record from which a waiver can be inferred. (1 Bates Pl. & Pr. 398; Ames v. Parrott, 61 Neb. 847.)

However, the affirmative defenses were established by the evidence. The plaintiff did not make out the semblance of a case. There is nothing in the evidence to show that the hoistman was incompetent, or that the defendant knew or had the slightest knowledge that he was incompetent, hence the plaintiff cannot recover on the ground of the incompetency of the hoistman. (10 Curr. Law, 736, 737; Rush v. Murphy Co. (Ia.) 112 N. W. 814; 6 Curr. L. 553, 554, 598 and cases cited.) The occasional negligence of a fellow servant is one of the ordinary risks assumed by the contract of employment. (Hannaman v. Bridge Co., 127 Wis. 550; 106 N. W. 1081.) The master would not be liable for the incompetency of the fellow servant if the injured servant knew of it and thereafter continued in his employment without objection. (Bank v. Chandler, 144 Ala. 286, 113 Am. St. 40, 39 So. 822; Ry. Co. v. Lovelly, (Kan.) 99 Pac.

990.) The master is not liable for an injury sustained by a servant through the negligent operation of an elevator or negligently leaving it in a dangerous condition by a fellow servant. (10 Ency. L. 952, 957.) The sudden breaking of machinery causing the injury of a servant will not generally justify a conclusion of the master's negligence. (Id. 556.) Where the master has exercised due care in selecting servants, the danger arising from the negligence of a fellow servant is one which a servant voluntarily assumes on entering the service and for which he is presumed to be satisfactorily compensated. (Ry. Co. v. Delland, 114 Tenn. 240; 86 S. W. 313.) Single instances of incompetency of a fellow servant are not admissible, but his general reputation as a person deficient in skill in the performance of his duties is admissible. (Cooney v. Ry. Co., 81 N. E. 905.) The burden of proving incompetency is upon a plaintiff alleging it. (Glass Co. v. Dickinson, 75 N. E. 957.) Specific acts of negligence, of drunkenness, or lack of skill of which the master had no notice, are not admissible to prove incompetency of a servant employed with due care. (So. Pac. Co. v. Hester, 135 Fed. 272.) The master is not liable for an injury to a servant when he has furnished suitable appliances for his work and the injuries are caused by the negligence of another servant who has failed to inform the servant injured of a defect in the appliances. (Longpre v. Milling Co., 99 Pac. 131.) The incompetency of a servant, in order to charge the master with negligence, must be the proximate cause of the injury complained of. (113 Am. St. 42, 43; 99 Pac. 853.) A hoisting engineer or cager and a miner are fellow servants. (White on Pers. Inj. in Mines, secs. 307, 423, 138; Longpre v. Milling Co., 99 Pac. 131; Mackintosh v. Jones, (Mont.) 93 Pac. 557; Gribben v. Min. Co., 142 Cal. 248; Niantic Coal Co. v. Leonard, 126 Ill. 216; Stearn v. Schiethard, 21 Ill. App. 97; Min. Co. v. Davis, 96 Tenn. 711; Roe v. Thomason (Tex.) 61 S. W. 528; Errickson v. Copper Co., 90 S. W. 291; Luman v. Min. Co. (Cal.) 74 Pac. 307; Duffy v. Kivilin, (Ill.) 195

Ill. 630; Galvin v. Pierce, 54 Atl. 1014; Chapman v. Reynolds, 77 Fed. 274; Buckley v. Gould, 14 Fed. 833.)

The doctrine of *res ipsa loquitur* does not apply in the case of the fall of a passenger elevator as between master and servant. (8 Curr. L. 934 and cases cited.)   An employee riding on an elevator and the conductor thereof are fellow servants, and the conductor and the engineer are also fellow servants. (10 Ency. L. (2nd Ed.) 957.)   The operator of an elevator is bound to use only reasonable and ordinary care to keep it safe. (29 Cyc. 470.)   The court must take a case from the jury when on all the evidence no negligence appears. (Gibson v. Trust Co., 177 Mass. 100.) An employee familiar with the construction and operation of the employer's elevator used only for transporting material who rides thereon under an implied license for his own pleasure or convenience accepts whatever risk is incident to the construction and operation of the elevator. (O'Brien v. Steel Co., 100 Mo. 182.)   The directed verdict in this case is sustained by the following cases relating to injuries caused by the falling of elevators: Kaye v. Hosiery Co., 51 Hun, 519; Henson v. Beckwith, 20 R. I. 165; Shandrew v. R. Co., 142 Fed. 320; Chicago &c. Co. v. Schulz, 121 Ill. App. 573; R. Co. v. Andrews, (Ark.) 96 S. W. 183; Kappes v. Brown Shoe Co., 116 Mo. App. 154, 90 S. W. 1159; Latting v. Mfg. Co., 148 Fed. 369; Griffen v. Nance, 166 N. Y. 188, 82 Am. St. 630; McDonough v. Lanpher, 55 Minn. 501, 43 Am. St. 541; 10 Ency. Law, (2nd Ed.) 955. Other cases in point: 82 Am. St. 794; Burgess v. Stowe, (Mich.) 96 N. W. 29; O'Donnell v. McVeagh, 205 Ill. 23; Burns v. Mining Co., 80 N. E. 927; Adams v. Snow, 81 N. Y. 903; 188 N. Y. 175; Gorham v. Woodbury, 173 Mass. 180; Hoehman v. Eng. Co., 23 N. Y. Supp. 787; Hall v. Murdock, 72 N. W. 150; Purcell v. Shoe Co., 187 Mo. 276.

So far as the evidence discloses the machinery connected with the hoist and the cage or elevator was in perfect condition. There had never previously been an accident, and the accident which did occur cannot be attributed to the lack

of inspection or any defect in the machinery. It appears that it worked right after the accident; and it is difficult to surmise what the proximate cause of the injury was. Where a result is such that no reasonable man would expect it to occur and no knowledge is shown in the person doing the wrongful or negligent act that such state of facts exists as to make the danger probable, the injury will not be regarded as actionable as against the wrong-doer. This is particularly true where the injury results from an act of the injured party so obviously fraught with peril as to deter one of reasonable intelligence. (L. & P. Co. v. Hodges, 109 Tenn. 331, 97 Am. St. 884.) A person is not bound to foresee and provide against casualties never before known and not reasonably to be expected, or which would not have arisen save under exceptional circumstances. No opportunity was given the engineer to test the machinery, for the plaintiff and the other men crowded upon the cage the first thing in the morning and gave the signal to lower it. The machinery used in hoisting was very simple. Upon the point that there is no liability in case of misadventure or unforeseen accident the following authorities are cited: 29 Cyc. 433, 434, Coal Co. v. Gibson, 160 Ind. 319, 98 Am. St. 322; Green v. Urban &c. Co. (N. Y.) 94 N. Y. Supp. 743; Ry. Co. v. Locke, 112 Ind. 404, 2 Am. St. 193; Laflin v. R. Co., 60 Am. Rep. 433; R. Co. v. Smiesni, 104 Ill. App. 194; Fox v. Wooden Ware Co., 61 Atl. 245, 211 Pa. 645; Uggla v. Brokaw, 79 N. Y. Supp. 244; Laven v. Moore, 211 Pa. St. 245, 60 Atl. 725; Whitehouse v. Lumber Co., (Wash.) 97 Pac. 78; Christensen v. Ry. Co., (Utah) 99 Pac. 676; 6 Curr. L., 527; 9 Curr. L., 849, 850 and cases cited; 10 Ency. L. 956; Britt v. Frank & Co., (Cal.) 94 Pac. 1051; Beasley v. Transfer Co., 148 Mo. 413; Young v. Mo. Pac. Co., 63 Mo. App. 275; White on Per. Inj. in Mines, sec. 84.

An injury caused by the act of God or of a superior agency without the fault of defendant will not impose any liability upon him. (21 Ency. L. 497; 29 Cyc. 441.)

Winds of unnatural and extraordinary violence, extraordinary rain, storms, floods, fires and frosts are held to be acts of God within the rule exempting a defendant from liability. (Birmingham Water Works, 11 Exch. 781; 2 Jur. (N. S.) 333; 25 L. J. Exch. 212.) We contend that it sufficiently appears from the plaintiff's evidence and that of his witnesses that the accident was unforeseen and was purely inevitable. It was not shown that the accident was caused by a leaking pipe or valve. But if it appeared that the accident was so caused, then no negligence was shown because of any imperfect construction. Nothing was shown but that it was a cold and frosty morning, and that statements were made by officers of the company that the accident was caused by a leaky pipe or valve or by ice on the brake.

Ladders were provided in another compartment of the shaft, and after the accident the plaintiff went up these ladders unaided and alone. The men selected the cage for the purpose of going to their work. The ladders were provided for that purpose, whereas the cage was constructed in such a manner that anyone could see it was intended for the purpose of raising and lowering materials from and into the mine. The plaintiff thus needlessly exposed himself to danger, and was negligent. (6 Curr. Law, 584; Leard v. Paper Co., (Me.) 60 Atl. 700; 4 Curr. Law, 581-582; Avery v. Oliver, (N. C.) 49 S. E. 91; Gillette v. Elec. Co., (Mass.) 72 N. E. 255; Kennedy v. Pow. Co., 185 Mass. 442; Latrobe & Co. v. Regan, 130 Ill. App. 140; Woeffler v. Lewiston &c. Co., (Wash.) 96 Pac. 493; Dodge v. Coal Co., 91 S. W. 1007; 51 S. E. 12, 123 Ga. 35; Reynolds v. Grace, 115 Ill. App. 473; Gallaher v. Snellenburg, (Pa.) 60 Atl. 307; Westman v. W. R. Co., (Or.) 91 Pac. 478; Punkowski v. Leather Co., 57 Atl. 559; Cartledge v. Mfg. Co., 120 Ga. 321; Mfg. Co. v. Benjamin, 109 Ill. App. 96.)

There can be no recovery by the servant where the risk is obvious; where the knowledge of the servant is equal to that of the master; where he has equal means of ascertain-

ing the condition of machinery and appliances, and works without protest.; or. where he voluntarily goes into danger. (Crane v. R. Co., 99 Pac. 169; Westman v. Wind River Co., supra; 6 Curr. Law, 589; R. Co. v. Thompson, 112 Ill. App. 463, 210 Ill. 226; Purkey v. So. C. & T. Co., 50 S. E. 755; Stackpole v. Wray, 99 N. Y. Supp. 1045; 99 App. Div. 262; Roth v. Eccles, (Utah) 79 Pac. 918; Am. L. Co. v. Heins, 141 Fed. 45; Thom v. Shipping Co., (Wash.) 81 Pac. 711; Christiansen v. Tank Works, 127 Ill. App. 86, 223 Ill. 142; Meshisnek v. Seattle S. & G. Co., (Wash.) 99 Pac. 9; Trakal v. Baking Co., (Ill.) 60 N. E. 399; Quinn v. Allen, (Ga.) 57 S. E. 957; 101 N. W. 183; 10 Curr. Law, 781, 782.)

The extent of the duty of the master to furnish a safe place to work is settled by the case of Kreigh v. Westinghouse & Co., 214 U. S. 249, holding that the master under such duty is not responsible for injuries resulting from the place becoming unsafe through negligence of the workmen in the manner of carrying on the work, and that it is not the duty of the master to keep the place safe at every moment, so far as such safety depends on the due performance of the work by the servants. There is nothing in the rule which renders the peremptory instruction objectionable. No rules for the operation of the hoist were necessary, the machinery being very simple and easily understood. (Kanella v. Nichols Chem Co. 83 N. Y. App. Div. 45; Wagner v. N. Y. &c Co., 75 Id. 552; 96 Id. 40, 89 N. Y. Supp. 55; Blust v. Tel. Co. (Or.) 84 Pac. 847; 8 Curr. Law, 878, 879; 10 Id. 730; Smith v. Iron Co., 42 N. J. L. 467; Bailey's Liability for Inj. 72; Ford v. Fitchburg Co., 110 Mass. 240; Goodman v. Granite Co., (Del.) 52 Atl. 332; Wood on Mast. & Ser. sec. 403; Mortgan v. Iron Co., 133 N. Y. 666; Line Co. v. Richardson, 95 Va. 326; 26 Cyc. 1137-1159; Barrigan v. R. Co., 30 N. E. 57.)

· Since there was no evidence to sustain the allegations of negligence it was the duty of the court to direct a verdict for the defendant. (Coulter v. Laundry Co., 67 Pac. 973;

Welch v. Stone Co., (Pa.) 64 Atl. 392; Lutz v. R. Co., (N. M.) 16 L. R. A. 819; Boswell v. Bank, 16 Wyo. 201; Ry. Co. v. Cook, (Wyo.) 102 Pac. 657.) Whatever error there may have been in excluding the testimony offered on one occasion as to the condition of the machinery when run by another company six months before the accident was cured or furnishes no ground for reversal, since there was testimony of the same witness and others upon the subject which was allowed to remain in the record.

(On petition for rehearing.) The case was tried below as if there had been no reply. Counsel for defendant in error was not served with a copy of the reply, nor was one filed with the papers as required by statute. The leaky condition of the valve over the hoist does not show even prima facie negligence since the evidence shows that it was perfectly safe and that the accident did not result from any such defect. The allegations concerning the cause of the accident are contradictory and confusing, and cannot all be true, hence they should not all be submitted to the jury to permit them to "guess" the cause of the injury. (Peterson v. Iron Works, 93 Pac. 1077; Olmstead v. Mfg. Co., (Wash.) 94 Pac. 474; Sandt v. Foundry Co. (Pa.) 63 Atl. 596; Min. & Mill. Co. v. Sullivan, (Colo.) 92 Pac. 679; Iron Works v. Wantland, (Okl.) 114 Pac. 717; Mau v. Lumber Co., (Ida.) 114 Pac. 910; Cummings v. Copper Co., 40 Mont. 599, 107 Pac. 904; Stone v. R. Co., 35 Utah, 305, 378, 100 Pac. 362, 390.) There was no evidence tending to show that defendant was negligent in allowing the valve to remain where it was placed. The evidence as to the statement made after the accident by the superintendent and hoistman should not have been admitted. (Luman v. Min. Co., (Cal.) 74 Pac. 307; Borland v. Nevada Bank, 32 Am. St. 41.) Such admissions could not bind the defendant and were not entitled to be submitted to the jury. Without that evidence there is nothing to show what caused the injury, or whether there was any direct negligence on the defendant's part in relation to the ice or frost on the

brake. With that evidence excluded there would be left for consideration only the evidence relating to the competency of the hoistman, and the absence of a rule requiring a test of the hoisting works. The presumption is that the defendant did its duty in selecting competent servants, and that presumption is not overcome by proof of a single act of negligence on the part of the servant. (Hage v. Luedinghaus, (Wash.) 111 Pac. 1041; Monson v. Copper Co., 39 Mont. 50, 101 Pac. 243; Taylor v. Mill. Co., 50 Wash. 306, 97 Pac. 243; Walkowski v. Consol. Mines, 115 Mich, 629, 73 N. W. 895.) There was nothing in the evidence to submit to the jury tending to show the incompetency of the hoistman. Any prudent person would have employed him. We think it clear that the accident was unforeseen and could not be guarded against. Hence it was proper to direct a verdict. (Reino v. Montana M. L. D. Co., (Mont.) 99 Pac. 853.) The statements made to the plaintiff by the defendant's superintendent and hoistman as to the cause of the accident were mere matters of opinion, and as such were incompetent and inadmissible. (Jones v. Hatchett, 14 Ala. 744; R. Co. v. Hall, 105 Ala. 599; Orr v. State, (Ala.) 23 So. 696; Fogel v. R. Co., (Cal.) 42 Pac. 565; Smuggler &c. Co. v. Broderick, (Colo.) 53 Pac. 169; Hapkins v. R. Co., 78 Ill. 33; Beardstone v. Clark, (Ill.) 68 N. E. 378; Brant v. Lyon, (Ia.) 14 N. W. 227; Gilruth v. Gilruth, 40 Ia. 346; Insley v. Shire, (Kan.), 39 Pac. 713; Gilbert v. Guild, (Mass.), 12 N. E. 368; Harris v. Clinton, (Mich.) 31 N. W. 425; Ennis v. Little, (R. I.) 55 Atl. 824; Beardsley v. Township, (R. I.) 41 Atl. 618; Bruce v. Beall, (Tenn.) 41 S. W. 445; Crane v. Columbus Con. Co., 73 Fed. 984; 1 Wigmore on Ev., sec. 658.)

The verdict was properly directed upon the competent evidence in the case. (2 Thomp. on Trials, 1604. secs. 2242-2273; White on Inj. in Mines, secs. 132, 134; 6 Ency. Pl. & Pr. 936; Bolln v. Metcalf, 6 Wyo. 1.) In a supplemental brief the following authorities were cited: Downey v. Sawyer, 157 Mass. 418; Campbell v. Jugheart,

50 App. Div. 460; Bucher v. Pryival, 45 N. Y. Supp. 972;
Owen v. Mining Co., 92 Id. 270; Central &c. Co. v. Ault,
75 Neb. 249; Snyder v. Rogers Co., 69 N. J. L. 347; Ca-
passo v. Woolfolk, 163 N. Y. 472.

POTTER, JUSTICE.

This action was brought in the District Court in Albany
County by Erling J. Engen against The Rambler Copper
and Platinum Company, a corporation, to recover damages
for personal injuries alleged to have been sustained by the
plaintiff on the 9th day of February, 1909, through the neg-
ligence of the defendant. The plaintiff was employed by
the defendant to work in and about its mine, and had been
so employed for several years whenever the mine was in
operation. It is admitted by the pleadings that the mine
was operated by means of a shaft sunk thereon to the depth
of one hundred feet and more through which the ore and
mineral taken from the underground workings were hoisted
to the surface, the answer alleging that the shaft was 170
feet deep; and that a hoist was established at the mine op-
erated by steam power, applied by means of a large boiler
and stationary engine and other machinery and appliances
necessary for the operation and control of said hoist. The
petition alleges that the means provided for the plaintiff to
go to and return from his underground place of work was
a cage which was raised and lowered by machinery under
control of an engineer, and that plaintiff was required to go
to and from his work in that way. This allegation is denied
by the answer. On the morning of the day above men-
tioned, for the purpose of being lowered to his place of
work, the plaintiff, with five other employes of the defend-
ant, went upon the cage which was operated by said hoist-
ing machinery, and upon a signal or word to the hoistman
or engineer indicating that the men were ready to be lowered
the cage was started, but instead of descending under the
usual control of the machinery provided for that purpose
it dropped rapidly to the bottom of the mine resulting in
the injuries to plaintiff complained of.

Briefly stated the allegations of negligence are as follows: That the engineer (one Holmes) was incompetent, and careless and reckless by habit, and that the defendant was negligent in employing him. That the shaft house was improperly and negligently constructed, and the pipes conducting water and steam around and over the hoisting machinery were improperly and carelessly placed; that the defendant negligently allowed said pipes and a certain valve connected therewith to get out of repair so that the same leaked, and the moisture therefrom during the night before plaintiff's injury was negligently allowed to accumulate upon and about the machinery and form frost and ice thereon, thereby rendering the same unsafe and unfit for service. That the defendant did not adopt a necessary and reasonable rule requiring the engineer to raise and lower the cage before the workmen entered thereon in the morning, and did not instruct him to take that or any other precaution to protect the plaintiff; and that the defendant neglected its duty to have the shaft house, hoist and machinery examined or inspected at reasonable intervals of time, or at all. It is alleged that by reason of said negligent acts and omissions of the defendant the cage and machinery became a great danger to plaintiff and an unsafe way of going to and from his place of work; that on the morning in question, using due care and without any fault on his part, the plaintiff stepped on the cage to be lowered to his place of work; and thereupon, through said alleged negligence of the defendant, the cage was started without being tested, the brakes were useless by reason of said frost and ice, the engineer because of his incapacity was unable to stop the cage, and it dropped down the shaft with great velocity, whereby the left foot of the plaintiff was crushed, and the bones therein dislocated, the muscles and tendons of his ankle joints were torn, and he was severely bruised and greatly injured.

By the first defense in the answer the allegations of negligence were specifically denied. The answer also con-

tained affirmative allegations in substance as follows: For a second defense, that each of defendant's servants, including the hoistman, who in any manner contributed to plaintiff's injuries was a fellow servant of the plaintiff. For a third defense, that if the person operating the hoist was incompetent the plaintiff was fully acquainted with his character and incapacity, and with such knowledge continued voluntarily to work and descend the shaft in the cage at his own risk and without compulsion on the part of the defendant. For a fourth defense, that the alleged defects in the machinery and appliances, if they existed, were apparent and readily discernible by plaintiff and others, and that plaintiff having the same means as the defendant of ascertaining the condition thereof continued voluntarily to work in and about the same at his own risk without compulsion from the defendant. For a fifth defense, that the injuries complained of, if sustained as alleged, were due to and caused by one of the risks and dangers incident to plaintiff's employment; and that he assumed the risk of such injuries and dangers by deliberately selecting the cage as a means of going to work, knowing that it had not been tested, when there were provided for him safe, secure, sufficient and convenient manways and ladders in another compartment of the shaft. For a sixth defense, contributory negligence on the part of the plaintiff was alleged. In connection with the denial of the allegation of the petition charging negligence in failing to have the shaft house and machinery examined and inspected, it was alleged in the first defense that there were frequent examinations and inspections, and that said shaft house and machinery were examined and inspected daily by the hoistman and mine foreman and other agents and employees of defendant. The reply which it is claimed was filed denied generally the allegations of each affirmative defense, and specifically that the hoistman was a fellow servant of the plaintiff, or that plaintiff was negligent at any time or in any manner or thing whereby his injuries were received; but admitted that the

hoistman was defendant's agent for the examination and inspection of the machinery.

In addition to proof of the fact that plaintiff was employed by the defendant and was injured as above stated, evidence was produced on his behalf for the purpose of showing that the person engaged in operating the hoist was incompetent; that there was a defect in the machinery connected with the hoist which caused or materially contributed to the injuries complained of; and that it would have been a reasonable rule to require the cage to be lowered and raised to see that it was in working order before the workmen were allowed to descend therein to their respective places of work.

The showing made by the evidence relating to the competency of the hoistman may be summarized as follows: (1) That he was not an engineer by training or profession; that the ordinary duties of a hoistman do not require that he should be a skilled engineer or machinist, and usually he is not, but he should know how to run a hoist, and be a cool, level headed man. (2) That he was nervous and excitable at times, and for that reason an unsafe man for the position in cases of emergency. (3) That he was addicted to the excessive use of intoxicating liquors, though it is not shown that he was ever intoxicated or used intoxicating liquors when at the mine, the showing as to specific instances of his excessive drinking referring to occasions when he was in town. One witness, however, testified that his nerves had become affected by over indulgence in strong liquor, and that his tendency to such indulgence was known among his associates and might have been ascertained by the exercise of ordinary care and inquiry. It appears that there had been a change in the corporation operating the mine, which involved, as we understand, a change of ownership, though it is not shown when that change occurred; but after the change Mr. Tannehill, who had been in charge at the mine for several years as foreman or superintendent, appears to have remained there for a time under Mr. Sher-

wood, the new superintendent. Tannehill testified as to the nervousness and excitability of the hoistman, and, in substance, that on account of his disposition in that respect he always felt that if he (the witness) was away something might happen; but that he (the hoistman) "was as good a man as I could find without trying some new fellow that I didn't know anything about." He also testified that he made no objection or complaint about the hoistman to the new superintendent; and it appears that there had been no previous accident at the mine.

As to the defects in the machinery, it was shown that a pipe, "to keep the water from draining on top," ran from the throttle valve of the engine over the hoist, and that a valve was so placed in that pipe above the hoist that, in case it leaked, the water would fall on the brake, or, as the witness stated, "on the brake—brake seat, just touch it." That fact was testified to by Mr. Tannehill, the former foreman or superintendent, and who was employed at the mine until about a month prior to the time of the accident in question, and who had installed the machinery; but on cross-examination he testified that he had no trouble from the valve leaking when he was there; that he considered it perfectly safe, and would have changed it if he had not thought it safe. It appears that at the time of this accident the mine was not operated at night, and that the night before the accident was very cold. The plaintiff testified that after the accident he got out of the cage and crawled up a ladder that was in a separate compartment of the shaft, and when he reached the surface was met by the hoistman, Mr. William Holmes, and Mr. Sherwood, the superintendent, each of whom explained to him that the accident was caused by ice on the brake. His testimony concerning such statements was as follows:

"Q. Did they or either of them undertake to make any explanation to you at the time of the cause of the accident?

"A. Yes, they said there was ice on the brake.

"Q. Did one or both of them make that statement?

"A. Both of them.

"Q. State, if you know, how the ice got there. What did they say as to how the ice got there?

"A. Well, I believe they claimed that it was a leaking pipe there somewhere around the brake, and that the water, during the night, that the water had dripped onto part of the machinery and splashed it under the brake and froze."

(Cross-examination.) "Q. Now, who was it that told you there was ice on the brake? A. Mr. Holmes, himself. That is the engineer, and Mr. Sherwood. Q. When was that? A. Shortly after I got on the surface. Q. Did they say anything else about it? A. No, only that there was a pipe, a little small pipe, running over the brake, and there was a valve there that was leaking. Q. Now, when did they tell you that? A. Shortly after I got out of the mine, I told you. Q. That same day? A. That same day, yes."

Tannehill, the former superintendent, and one Kinney, after a showing as to their competency as witnesses on the subject, testified that a reasonable rule for the operation of the hoist would have been to require the lowering and raising of the hoist to ascertain that it was in working order before lowering the men down the shaft. The witness Kinney testified that such a rule is necessary and reasonable to provide for the safety of the men, for the reason that the machinery may stick after it has been idle, the brake may stick or there may be something the matter, and a proper test is to run the cage up and down the shaft, and that the rule is the same in all mines, regardless of the number of men employed. That no such rule was in force at this mine we think sufficiently appears. Mr. Tannehill testified that when he was there the machinery was occasionally tested by lowering and raising the cage, but not generally.

Upon the motion of counsel for defendant at the close of plaintiff's evidence the court instructed the jury to return a verdict in favor of the defendant, which was accordingly done, and a judgment for the defendant was entered upon

the verdict.   The rulings upon the motion and the instruction were duly excepted to, a motion for new trial was filed and overruled, and the plaintiff has brought the case here on error.

1.   The first question to be considered arises upon the contention of counsel for defendant that no reply was filed, and that the allegations of new matter in the answer therefore stand admitted.   The statute provides that where the answer contains new matter, the plaintiff may reply to the same, denying generally or specifically each allegation controverted by him; and may also allege in ordinary and concise language any new matter not inconsistent with the petition, constituting an answer to such new matter in the answer.   (Comp. Stat. sec. 4399.)   And that every material allegation of new matter in the answer not controverted by the reply, shall, for the purpose of the action, be taken as true.   (Id. sec. 4401.)   At the hearing, counsel for plaintiff suggested a diminution of the record, and presented an affidavit of the Clerk of the District Court, stating that the affiant had been informed that the original papers transmitted by him to this court did not contain the reply; that under an oral agreement of counsel and the advice of the court the plaintiff was given permission to file a reply during the trial, and the case proceeded as if the reply had been filed; that the appearance docket kept by affiant shows that a reply was filed; and that it was filed either on the 25th or 26th day of March, 1910, but the original reply cannot be found.   An affidavit of Mr. Arnold, one of plaintiff's counsel, was also presented affirming the truth of the facts stated in the clerk's affidavit, and stating further that the case came on for trial March 25, 1910, at which time the court sustained a motion of the plaintiff to strike from the defendant's answer certain matter as redundant and irrelevant; that to save defendant's counsel the necessity of preparing a new answer, and to facilitate the business of the court, a jury being then in attendance, it was agreed in open court by counsel for defendant, and at the suggestion of the

court, that the case proceed to trial as if a reply denying new matter had been filed, and that the plaintiff be permitted to file such reply during the trial. That affiant drew the reply, which was verified by the oath of associate counsel on March 25, 1910, and on that day handed to the clerk of court for filing. That an office copy was retained by affiant, and is attached to the affidavit; that the copy so attached is in all respects an exact copy of the reply that was filed, save and except that affiant is unable to state positively whether it was sworn to before the clerk of court or a certain named notary public. The copy attached to counsel's affidavit shows that each and every allegation of new matter in the answer here claimed to stand admitted for want of a reply was denied. No contrary showing was made. Counsel for plaintiff asked leave to file the copy of the reply authenticated by said affidavits as a part of the record, that it may be considered as the reply filed in the cause.

The record supports the showing made by the affidavits in these respects: It appears thereby that plaintiff's motion to strike from the answer the seventh defense and a large part of the first defense was sustained March 25, 1910; that the trial commenced on that day and continued through the following day, and that the motion for a directed verdict was taken under advisement, and decided on March 28, 1910, which is also the date on which the verdict appears to have been filed. And if it be conceded that proof of the facts alleged as new matter in the answer, or an admission that they were true, would defeat recovery, it appears that a failure to file a reply was not mentioned as a ground for the motion for peremptory instruction in favor of defendant, although several grounds for that motion were specifically stated, which would seem to indicate an understanding that the reply might be filed during the trial, and that the trial had proceeded as though the necessary reply had been filed.

The rule is apparently well settled that after a contest on the merits, as if new matter in the answer were denied, the

want of a reply will be deemed waived, or the reply will be presumed to have been lost. (1 Bates Pl. Pr. Par. &c., 398; Jordan v. Bank, 74 N. Y. 467; Franc v. Nirdlinger, 41 O. St. 298; Nor. Supply Co. v. Wangard, 123 Wis. 1; Ames v. Parrott, 61 Neb. 847.)  But without deciding whether the original record in this cause would warrant the inference that the reply was waived, the showing made upon the suggestion of a diminution of the record is clearly sufficient, we think, to show that a reply was properly filed and that the same has been lost.  Upon that showing the authenticated copy will be permitted to be filed as part of the record and be considered as the reply.

2.   A witness, who for a month or more about six months prior to the accident had been employed as engineer or hoistman at the mine, was asked by plaintiff's counsel about the condition of the machinery when he was there.  Thereupon the court inquired as to the time referred to, and counsel stated that it was six months before, and that they proposed to show the condition of the machinery six months prior to that, and again after the accident, for the purpose of showing that it was in the same condition.  An objection to the offer as too remote was sustained, the court saying: "Confine it to the day of the accident."  The ruling was excepted to and is here assigned as error.  Before the offer was made plaintiff had given the testimony above quoted as to the statements made to him to the effect that the accident was caused by ice on the brake resulting from a leaky pipe above the hoist, and it is evident that his counsel relied thereon as evidence tending to show that on the day of the accident or the night before there was a leak in the valve that was in the pipe above the brake, and that such defect was the proximate cause of the injuries; and we think that their offer is to be fairly understood as proposing to show that the same defect existed six months and more before as well as after the accident.  If that condition before the accident could be shown it would have been competent for two reasons.  It might tend to show the leaky condition

of the valve on the day of the accident, particularly in connection with the statements of the superintendent and hoistman, and might be important as identifying the leaky pipe referred to by such statements.   Further, it was necessary for plaintiff to show actual or constructive notice of the defect on the part of the defendant to charge it with liability on the ground that it had not exercised the care required to keep its machinery and appliances in reasonably safe repair, for the protection of its employees, and it is not the law that for such purpose inquiry concerning the alleged defect must be confined to the day of the accident, but evidence of the condition some time prior thereto and down to the time of the accident is admissible.   (Shea v. Pac. Power Co., (Cal.) 79 Pac. 373; Austin v. Fitchburg R. R. Co., 172 Mass. 484; Rockford City Ry. Co. v. Blake, 173 Ill. 354; Reese v. Min. Co., 17 Utah, 489; Island Coal Co. v. Neal, 15 Ind. App. 15; Chicago &c. R. R. Co. v. Chipman, 87 Ill. App. 292; Colo. Mortgage Co. v. Rees, 21 Colo. 435; Richmond Ry. &c. Co. v. Bowles, 92 Va. 738; Welfelt v. Illinois Cent. R. Co., 149 Ill. App. 317.)   In the Colorado case cited the court say as to evidence offered tending to show a previous and continuous defective condition: "The evidence was relevant for this purpose, and also competent to show notice and knowledge on the part of the company."   In Austin v. Railroad, supra, the court say: "We think that it would have been competent for the jury to find that the car had been some days at least in an unsafe condition for transportation, and that the defendant knew or ought to have known of its condition."   In Coal Co. v. Neal, supra, evidence of the condition of the roof of a mine in which an accident occurred for a year prior thereto was said to be "clearly admissible, when taken in connection with evidence that the same condition remained until the accident, as it certainly tended to charge appellant with knowledge of the defect, because if it had thus long existed it might by the exercise of reasonable care have been discovered."   And in the California case cited, evidence of the existence of the alleged

defect a year or two before the accident was held admissible, where the offer was coupled with a proposal to show that the same condition continued down to the time of the accident. We think the exclusion of the evidence as to the condition before the accident was error. It is contended by counsel for defendant that the witness gave substantially the evidence that was offered in answering other questions. We do not think so, nor was the error cured by the fact that afterwards the witness Tannehill testified on cross-examination that he had no trouble with the valve leaking when he was there. We know of no reason preventing the plaintiff from showing the condition by two or more witnesses within reasonable limits, but we fail to find that the evidence offered and excluded was covered by the testimony of any other witness.

3. Counsel for defendant contends that the plaintiff's injuries were caused by his own negligence in selecting the cage to descend to his place of work instead of going down the manway or ladders that had been provided by the defendant for that purpose in another compartment of the shaft. This is not sustained by the evidence. While it appears that provision had been made for going into the mine by means of ladders so constructed that there was a platform every twelve feet, it was abundantly shown that the customary method employed by the men in going to and from their work in the mine was by the cage, and the evidence tended strongly to show defendant's knowledge of such custom and that it permitted the same without objection for such a period of time as to justify a belief that it assented thereto. It appears that while Mr. Tannehill was superintendent he frequently went down the shaft that way and occasionally with the men. He testified that up to the time he went away from there, "we always went up and down the cage, when it was possible to go that way. Of course, if the cage was out of use, or in use for something else, we went on the ladder, but then it was very seldom that anyone went on the ladder"; and, further, that he may not

have directed the men to go by the cage, but "it was the general understanding." It appears that there was no order or rule requiring the men to use the cage for the purpose stated or directing them not to do so; and though the workmen who testified stated that they might have used the ladders, they did not usually do so, and one of them testified that they would have lost their job if they did. None of the witnesses testified that the purpose of the ladder or ladders was for the convenience or use of the employees in going to and returning from their places of work in the mine, but the testimony tends to show that it was generally used for a different purpose. Upon the evidence it cannot be held as a matter of law that in using the cage as a means for descending the shaft to his place of work, the plaintiff was negligent. This point was not stated as a ground for the motion for the peremptory instruction. If there is anything in the proposition it was at least a question for the jury. (Boyle v. Columbian Fire Proofing Co., 182 Mass. 93; Stringham v. Stewart, 100 N. Y. 516.) In a case where it did not appear that the employer was aware of a similar custom of its employees or that it had ever authorized it, liability for an injury occurring thereby was denied. (Gribben v. Min. & Mill. Co., (Cal.) 75 Pac. 839.) That is not the situation in the case at bar.

4. The evidence tends to show that the accident was caused by the fact that there was ice on the brake formed by the freezing of water that had fallen upon it from the valve in the drain pipe running over the hoist as above described, whereby the brake became of little if any use in regulating the descent of the cage. If that is true it would follow as a necessary inference that the valve leaked. Having been so located that in case of a leak the water from the valve would fall upon the brake, and by freezing if not otherwise interfere with the proper operation of the hoist, it became the duty of someone to be reasonably prudent in keeping it in repair, or ascertain by the exercise of reasonable care that the brake and other parts of the hoisting machinery were

in working order. It is contended by counsel for defendant that if there was any negligence in that respect or in any other that caused the accident it was the negligence of the hoistman, a fellow servant of the plaintiff, for which the defendant would not be liable. Counsel for plaintiff contend that the proximate cause of the accident and the resulting injury to the plaintiff was the negligence of the defendant in allowing the valve to remain where it was placed, and in failing to exercise proper care to keep it in reasonably safe repair, as well as in the employment of an incompetent hoistman, and failure to inspect and to adopt a reasonable rule for testing the hoist.

Before proceeding to discuss the question thus presented it should be stated that there is nothing in the evidence to show the condition of the valve as to leaking prior to the night of the accident, unless something in that connection might be indicated by the statements made to the plaintiff immediately after the accident above alluded to; but the absence of such evidence may have occurred through the ruling of the court confining the showing to the day of the accident.

There is no statute in this state defining the relation of fellow servants, or changing or modifying the rules which have been established by judicial decisions upon the principles of the common law for determining the liability of an employer for injuries sustained by an employee in the discharge of his duties. Statutes have been enacted imposing certain duties upon an employer in specified cases and giving the right of action for damages where an injury has occurred as a result of a willful violation of such duties, but they are not applicable here.

The principle that in the absence of a statute providing otherwise the master is not liable in an action for damages for an injury occurring to an employee through the negligence of a mere fellow servant is too well settled to require discussion, and was recognized and applied in McBride v. Union Pac. Ry. Co., 3 Wyo. 248. But it is equally well

settled that certain duties are personal to the master and cannot be delegated, so that if the servant charged with the performance of those duties fails to perform or negligently performs them, the master cannot escape liability on the ground that such negligent servant was a fellow servant of the one injured. That rule was also referred to and stated in the case cited as one of the exceptions to the general principle exonerating the master from liability for the negligence of a fellow servant. It is the duty of the master in the performance of such non-delegable duties to exercise ordinary or reasonable care, or, as otherwise expressed, the care and skill that a man of ordinary prudence would observe under the circumstances. And it is generally held that it is the master's duty for the protection of his employees to exercise such care and skill in the following particulars among others: (1) To furnish them with reasonably safe machinery, appliances, tools, and place to work, and to keep the same in reasonably safe repair. (2) To employ competent and sufficient employees with whom to work. (3) To establish and enforce reasonable rules for the safe conduct and regulation of his business. (2 Thomas on Negligence, 2nd Ed., p. 1389; 4 Thomp. Com. on Neg., sec. 3767.) For the negligent performance of any of these duties or the negligent failure to perform the same, the master is therefore liable whenever it appears that such negligence, either alone or concurrently with the negligence of one for whose conduct the master would not be answerable, is a proximate or efficient cause of the injury complained of.

The duty of providing and maintaining a reasonably safe place in which to work and reasonably safe machinery, and appliances, requires reasonable inspection and tests. The duty of the employer to guard his workmen against unnecessary and unreasonable risks extends not only to those that are known to him, but also to such as a reasonably prudent man in the exercise of ordinary diligence would know or discover, having regard to the danger to be avoided. (4 Thomp. Com. on Neg., sec. 3783.) As to this matter,

however, there exists a well recognized distinction between defects or dangers which arise in the progress of the work and constitute part of its details and risks, and those which do not. If the defect belongs in the former class the master is not liable, that is to say, where he has done all that is incumbent upon him in providing for the safety of the place, machinery or appliances, then if the same becomes unsafe by reason of changes incidental to the progress of the work, or by reason of the conduct of the fellow servants of the servant injured the master is not answerable. (Id., secs. 3781, 3876.) But where the duty of inspection exists the one who is selected or employed to perform it represents the master, and his negligence in performing or failing to perform the duty is the negligence of the employer.

We think the evidence tended to show that the falling of the cage was the result of negligence, and that it was sufficient to be submitted to the jury upon that question, unless it can be held as a matter of law either that the cause of the accident was the negligence of the hoistman as a fellow servant of the plaintiff, or that for some other reason appearing from the evidence the defendant would not be liable. It is uniformly held that where the injury is caused by negligence in the performance or failure to perform one of the positive duties of the employer the fellow servant doctrine does not apply, for as to such duty the negligent servant upon whom the duty rested is regarded as a vice-principal, and his act or failure to act as the act or failure of the employer. In other respects the authorities are conflicting concerning the rule for determining, in the absence of statute, when the relation of fellow servants exists. What may be said to be the prevailing rule because it seems to be the one more generally adopted is that the fact which determines whether the negligent employee is a fellow servant of the one injured or a vice-principal is not his grade or rank but the character of the act or service. That has been the doctrine of the Federal courts at least since the decision in the case of Baltimore & Ohio Railroad v. Baugh,

149 U. S. 368, where it was said: "If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but if it be not in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is held liable therefor." And in New England Railroad Co. v. Conroy, 175 U. S. 323, the opinion in the Baugh case is quoted from with approval, and the earlier case of Chicago, Milwaukee & St. Paul Railroad v. Ross, 112 U. S. 377, was overruled, in which it had been held that a conductor of a freight train, by reason of his authority as the one in charge of the train, was a vice-principal; the court saying as to that case: "We think it went too far in holding that a conductor of a freight train is, *ipso facto*, a vice-principal of the company." .

The question is not here involved whether in every case it would be improper to consider the relative rank or superior authority of the one shown to have been negligent, especially where the authority is general over the entire business or over a large and distinct department, and we shall therefore express no opinion concerning it; but as a general rule we think the one above stated is best sustained upon principle and authority, viz: that the character of the service rather than the grade or rank is the determining factor. One of the positive duties of an employer is said to be that of supervision, and it may be that the general rule stated affords adequate protection to those in subordinate positions against the negligent acts of a superior without the necessity of qualification or exception. The case of McBride v. Union Pacific Ry. Co., 3 Wyo. 248, has been cited as approving the superior servant rule announced in the Ross case. (2 Bailey on Per. Inj., sec. 737.) When the McBride case was decided Wyoming was a territory and the decisions of its courts were controlled by those of the Supreme Court of the United States as the court of last resort; it would be more correct, therefore, to say that the Ross case was followed and applied so far as the question was involved.

While that rule seems to have been applied in the McBride case, it was not independently stated or discussed.

In the absence of a statute providing otherwise, and where it does not appear that the negligence of the hoistman causing the injury complained of occurred in the performance or failure to perform a positive duty of the employer, by the clear weight of authority it is held that as to his duty to lower men to their work in the mine he is their fellow servant. (Bartonshill Coal Co. v. Reid, 3 Macq. 266, 19 Eng. Rul. Cas. 107; Bradbury v. Kingston Coal Co., 157 Pa. St. 231; Mulhern v. Lehigh Valley Coal Co., 161 Pa. St. 270; Buckley v. Gould &c. Min. Co., 14 Fed. 833; Wood v. New Bedford Coal Co., 121 Mass. 252; Trewatha v. Buchanan &c. Min. Co., (Cal.) 28 Pac. 571; Spring Valley Coal Co. v. Patting, 86 Fed. 433; Stoll v. Daly Min. Co. (Utah) 57 Pac. 295.) And likewise the engineer operating an elevator. (Spees v. Baggs, 198 Pa. St. 112; Stringham v. Hilton, 111 N. Y. 188; Wolcott v. Studebaker 34 Fed. 8; Mann v. O'Sullivan (Cal.) 58 Pac. 375.) In Illinois the con-association rule prevails viz: That to constitute the servants of a common master fellow servants so as to exonerate the master from liability for an injury caused to one of them through the negligence of another, it is necessary that they should be at the time actually co-operating with each other in the particular business in hand in the same line of employment, or that their duties should be such as to bring them into habitual association, so that they may exercise a mutual influence on each other promotive of caution. Applying that rule it is held in that state that the hoistman and miner are not fellow servants. (Spring Valley Coal Co. v. Patting, 210 Ill. 342; Illinois &c. Co. v. Cioni, 215 Ill. 583.) In those cases it appeared, however, that the engineer received his signals from either a top cager or a bottom cager, and that the miner injured had nothing to do in that connection. There were only a few men employed in the mine in question, and the signal to start the cage was given by the men or one of them about

to be lowered down the shaft, so that it must be held in line with the great weight of authority, that except as to some positive duty of the defendant to be performed by the hoistman, the latter was a fellow servant of the plaintiff; and an instruction to that effect upon the undisputed evidence would have been proper. Also that for his negligence as such fellow servant the defendant would not be liable, unless it was shown that he was incompetent, that the defendant negligently employed him or retained him in its employ as hoistman, and that his unfitness for the position was the proximate or efficient cause of the injury. There was evidence tending to show that he was addicted to the use of intoxicating liquors, and that his capacity was affected thereby. Not only was it the duty of the defendant ordinarily to exercise reasonable care in selecting a competent hoistman and one not habitually addicted to the use of intoxicating liquors so that if its negligence in that particular caused an injury to another employee not himself at fault the defendant would be liable, but the statute declares that no person addicted to the use of intoxicating liquors shall be employed as hoisting engineer. (Comp. Stat. 1910, sec. 3491.) By reason of that statute, if not otherwise, it was at least the duty of the defendant to make or cause to be made reasonable inquiries concerning the habits of Holmes, the hoistman, as to the use of intoxicating liquors, and a failure to do so would constitute negligence. While it might be seriously doubted whether the evidence on this subject reasonably considered shows that the accident may have been the result of the hoistman's incompetency, assuming him to have been incompetent, it should have been submitted to the jury with all the other evidence in the case for their determination as to the proximate cause of the injuries complained of; for we do not think that the peremptory instruction can be sustained on the theory that the evidence justified the court in saying as a matter of law that the proximate cause of the injury was solely the negligence of a fellow servant.

The existence of the relation of fellow servants is a question of law where all the facts relating to the matter are conceded or undisputed, and all reasonable minds must draw the same conclusion therefrom. Where the evidence is not thus conclusive, or the facts are disputed, the question is at least a mixed question of law and fact, to be determined by the jury under proper instructions. The question was presented upon the pleadings and the evidence whether the hoistman was charged with and negligent concerning the performance of a positive duty of the defendant, as well as the question whether the defendant was negligent respecting the duty to provide and maintain reasonably safe machinery, including the duty of reasonable inspection, and to adopt and enforce reasonable rules for its operation. The answer does not specifically allege that it was the hoistman's duty to inspect the machinery, but it does allege that the machinery was daily inspected by the hoistman, the mine foreman, and other agents and employees of the defendant; and the reply admits that the hoistman was defendant's agent for the purpose of inspection. In Fox v. Iron Co., 89 Mich, 387, upon the general rule above stated for determining the relation of fellow servants, it was held that the head engineer who was charged with the duty of keeping a certain hoisting apparatus in repair, was as to that duty not a fellow servant of the plaintiff who was injured, for the duty belonged to the corporation to perform. And in Atchison &c. R. Co. v. Mulligan, 67 Fed. 569, that respecting the duty of inspecting a locomotive engine the engineer represented the company, and was not the fellow servant of another employee injured as the result of a defective condition.

There is very little in the evidence touching the matter of the hoistman's duty beyond the showing that it was his duty to run the engine and hoist. Whether the leak in the pipe or valve or the presence of ice on the brake could have been discovered upon a reasonable examination, and whether such examination should have been made owing to the coldness of

the weather, if not otherwise, were, if not questions of fact alone, at least mixed questions of law and fact to be properly submitted to the jury, or, to state the matter in more general terms, it should have been left to the jury to determine under proper instructions whether the negligence, if any, that caused the injury was the negligence of a mere fellow servant, or the negligence of the defendant respecting its duty to provide and maintain reasonably safe machinery. We think also that upon the evidence the question should have been submitted to the jury whether there was negligence on the part of the defendant in failing to require as a reasonable rule the testing of the machinery by lowering and raising the cage before allowing the workmen to use it.

It would clearly be the duty of the defendant to repair the leak in the valve, if dangerous, unless the defect was one occurring in the progress and as one of the details of the work of operating the hoist or machinery and to be attended to as part of that work; and the failure to do so after notice of the defect, or under circumstances sufficient to charge the defendant with notice, would be negligence. We are not prepared to say that the evidence as to notice was sufficient to require or justify the submission of this question to the jury, for, as above stated, there is no direct showing as to the length of time the defect had existed, nor as to actual notice prior to the accident. The only evidence in support of the allegation that the hoist was improperly constructed is that of Mr. Tannehill, who installed the machinery, and who testified that the valve was so placed that if it leaked the water would fall on the brake; but on cross-examination, he testified that he considered that to be perfectly safe, and if he had not thought so he would have changed it. We cannot say, therefore, as a matter of law that there was improper construction, nor do we think the evidence on this point would furnish any ground for holding the peremptory instruction to be prejudicial error. We shall refer to a few cases seeming to be analogous in principle.

ciple as illustrating and supporting the views above expressed.

In Alaska United Gold Min. Co. v. Keating, 116 Fed. 561, decided by the Circuit Court of Appeals for the Ninth Circuit, the action was brought to recover damages for a personal injury to a miner caused by the cage in which he was being lowered in the shaft coming suddenly in contact with a chair or bar that had been negligently left down and across the shaft at a point about 290 feet below the surface. The trial court instructed the jury that the negligence in leaving the chair or bar down and across the shaft was the negligence of a fellow servant, and not the carelessness or negligence of the defendant, and that the verdict should be for the defendant. The court say: "This instruction was clear, positive, and direct, and disposed of the question of liability of the defendant in this action, with one single qualification, and that was the question, did the defendant owe to the plaintiff a positive duty to use reasonable precaution to ascertain whether the shaft was clear of obstructions before lowering him down the shaft to his place of work. This question the court submitted to the jury as a question of fact to be determined from the evidence relating to the custom in the operation of mines where this precaution was taken to secure the safety of the workmen. A number of witnesses testified that such a custom did prevail in many mines, because of the danger of obstructions and displaced timbers in the shaft caused by blasting operations. There was also the inference that the time elapsing between the coming up of the night shift and the going down of the day shift, to which the plaintiff belonged, made it specially necessary that the effect of such disturbances should be ascertained before sending workmen down the shaft. What was a reasonable precaution to be taken by the defendant to secure the safety of the plaintiff, under the circumstances of the case, was a question of fact for the jury, and justified the instructions of the court." The case of McFall v. Ia. Cent. Ry. Co., 96 Ia. 723 & 104 Ia. 47, was an action against

a railway company for injury to a brakeman through the alleged negligence of the defendant in permitting its water tank to become out of repair, whereby the water was permitted to run on and over the tracks, forming a sheet of ice thereon, which rendered the same dangerous for brakemen to perform their duty of coupling cars passing on its tracks and over said ice. It was held that there being evidence tending to show negligence on the part of the defendant and that plaintiff was not guilty of negligence, the question was for the jury, and a direction to find for defendant was error.

In the case of Balhoff v. Mich. Cent. R. Co., 106 Mich. 606, it appeared that a brakeman was killed by the derailment of a car that was being backed upon a side track, caused by the formation of ice on the tracks at a point where there was a slight depression in the roadbed. Held, that it was the duty of the defendant to provide a reasonably safe track, one which, measured by the standard of good railroading as actually conducted, can be said to be reasonably safe, and if such standard required the danger of ice freezing over the track to be foreseen, and the making of provision to prevent it, then it would be negligence to omit such provision; and the same rule would furnish the test of the adequacy of provisions made. Held, further, that these were questions of fact, unless the evidence was conclusive and uncontradicted, one way or the other; and that not being the case, it was a question for the jury whether a reasonably safe place had been furnished by the defendant. In Louisville & Nashville R. Co. v. Kemper, 153 Ind. 618, where it appeared that the railroad company permitted a portion of its roadbed underneath the cross-ties to become soft by reason of the flow of water from a hydrant of the company, so that the rails and cross-ties would sink down when the weight of a car was placed thereon, such condition not being obvious or apparent, but being known to the company, or by the exercise of ordinary care discoverable by it, the company was held negligent in failing to

keep the roadbed in a sound and safe condition for the protection of its employees.

It was held in Fifield v. Northern Railroad, 42 N. H. 225, that an action may be maintained against a railroad corporation for an injury to a brakeman caused by the negligence of the company in permitting its road to become blocked with snow and ice, and a car to be out of repair, the plaintiff being in no fault. The court said: "Whether the negligence (of the master) consisted in not discovering or in not removing the defects himself, or in not employing any or a sufficient number of repair-men, or competent ones, the action could be founded upon his personal negligence. * * * Ordinary care and prudence may have required that workmen should have been employed to repair the cars, and to remove the snow and ice from the track."

It appeared in the case of Courtney v. Cornell, 49 N. Y. Super. (17 J. & S.) 286, that the plaintiff was injured while employed by defendants in operating a derrick used in constructing a building, and was injured as the result of the slipping of the derrick from its place while in use. The accident was caused by the stretching of the guy ropes from rain which fell the night before the morning of the accident, and there was evidence that the accident might have been prevented by proper precautions, one of such precautions being the usual one after a rainy day, according to the testimony of an expert witness, of testing the ropes by raising from the ground the iron column for which the derrick was used, watching it to see what the rope gives, and then straightening the derrick up again. It was the duty of defendant's foreman to construct and rig the derrick, and he superintended the starting of the derrick on the morning of the accident immediately prior thereto. It was held that the dismissal of the action at the trial was error; that it was the continuous duty of defendants to furnish their employees a properly rigged derrick, and to maintain it in such condition; and that the foreman's negligence in

that regard was the negligence of defendants, for as to such duty the foreman was not the fellow servant of the plaintiff, though in other respects he might have been, but was the agent and representative of defendants concerning the duty of the latter to provide and maintain a safe derrick for the workmen, so far as reasonable care and precaution could affect that result. (See also Harsen v. N. P. R. Co., 139 Wis. 186; Thomas v. Ross, 75 Fed. 552; Donnelly v. Granite Co., 90 Me. 110; Mayer v. Liebmann, 16 App. Div. N. Y. 54; Lawson v. Truesdale, 60 Minn. 410; Nutzman v. Germania Life Ins. Co., 78 Minn. 504; Kreigh v. Westinghouse & Co., 214 U. S. 249.)

It does not appear that it was any part of the plaintiff's duty to inspect the machinery, and we perceive nothing in the evidence that would justify taking the case from the jury on the ground that the plaintiff ought to have known of the alleged defect that may have caused the accident, or that he was himself negligent. Nor can such action be sustained on the ground suggested in defendant's brief that the accident was the result of an act of God. "If there is any intervening human agency which contributes to cause the damage it cannot be considered as caused by an act of God." (Sandy v. Lake St. El. R. Co., 235 Ill. 194; Welfelt v. Ill. Cent. R. Co., 149 Ill. App. 317.) The fact that the water on the brake froze because the night before the accident was very cold would not exempt the defendant from liability, if it should be found that the negligence of the defendant in failing to repair a defect, the existence of which it knew or ought to have known by the exercise of reasonable care, or in failing to inspect, or in any other particular within the allegations of the petition, was a proximate cause of the injury. For the reasons stated the judgment must be reversed and the cause remanded for new trial.

BEARD, C. J., concurs.

SCOTT, J., did not sit.

ON PETITION FOR REHEARING.

POTTER, JUSTICE.

Counsel for defendant in error has filed a petition for rehearing in this case. We have carefully considered the able brief filed in support of the petition, but remain convinced that the questions discussed in the former opinion were properly disposed of, and we deem it unnecessary to again state the reasons for the conclusions announced. The additional point is now made for the first time in this court that the statements made by the mine superintendent and hoistman to the plaintiff explaining the cause of the accident should have been excluded as incompetent. It is true that the testimony of the plaintiff concerning those statements given upon his direct examination was admitted over the objection of the defendant, but the same facts were again testified to upon his cross-examination, as shown in our former opinion, and all his evidence relating to such statements was in the case when the motion was made and sustained for a directed verdict. It does not appear that such motion was sustained on the ground of the incompetency of the statements aforesaid, but on the contrary we think it appears that the verdict was directed upon the ground of the insufficiency of the plaintiff's evidence to establish his right to recover. Therefore, if it should be conceded that such statements were erroneously admitted it is doubtful if it would be proper in this court under the circumstances to exclude the same from consideration in disposing of the case. To now hold that such evidence was improperly admitted and affirm the judgment on that ground would deprive the plaintiff of the right to furnish other evidence upon the subject, if any should be available; a right which he would have had if the evidence had been excluded or stricken out upon the trial. Again to exclude it from consideration at this time would render the error in confining the showing as to the condition of the machinery to the day of the accident even more prejudicial than with the evidence of such statements in the case.

But if this testimony of the plaintiff should be held to be. incompetent and therefore excluded, it would not follow that the judgment ought to be affirmed, for the evidence tending to show the incompetency of the hoistman and the negligent failure of the defendant to provide for the testing of the hoisting machinery was sufficient to require the submission of the case to the jury; and the error in excluding the offer of the plaintiff to show the condition of the machinery before the day of the accident would constitute a further ground for reversal. We do not decide the question of the competency of the statements made by the mine superintendent and hoistman to the plaintiff. Upon a new trial that question can again be presented and determined, and if the evidence should then be excluded the plaintiff will not be misled. A rehearing will be denied.

BEARD, C. J., and SCOTT, J., concur.