2008 WY 139

**The BOARD OF COUNTY COMMISSIONERS OF the County OF CAMPBELL, Wyoming, Appellant (Respondent),**

v.

**RIO TINTO ENERGY AMERICA, INC., Appellee (Petitioner).**

Supreme Court of Wyoming.

Nov. 25, 2008.

Representing Appellant: Carol Seeger, Deputy Campbell County Attorney, Gillette, Wyoming.

Representing Appellee: Hadassah M. Reimer of Holland & Hart LLP, Jackson, Wyoming, and Patrick R. Day of Holland & Hart LLP, Cheyenne, Wyoming. Argument by Ms. Reimer.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] This is an appeal from a district court's reversal of a county's calculation of statutory interest owed upon underpaid taxes. We agree with the district court's reading of the applicable statute and, therefore, affirm.

## ISSUE

[¶ 2] Does Wyo. Stat. Ann. § 39–14–108(c)(i) (LexisNexis 2007) require counties to offset overpaid taxes against underpaid taxes across tax years in an audit when calculating interest on underpaid taxes?

## STATUTE

[¶ 3] Wyo. Stat. Ann. § 39–14–108(c)(i) provides as follows:

(c) Interest. The following shall apply:

(i) The taxpayer is entitled to receive an offsetting credit for any overpaid gross product or severance tax identified by an audit that is within the scope of the audit period, without regard to the limitation period for requesting refunds. In calculating interest, the department or board of county commissioners shall first compute a net deficiency amount after subtracting any offsetting credit and then calculate any interest due[.]

## STANDARD OF REVIEW

[¶4] Like the district court, we review administrative agency decisions pursuant to Wyo. Stat. Ann. § 16–3–114(c) (Lexis-Nexis 2007). We do not afford any deference to the decision of the district court, treating the case rather as if it had come directly from the agency. *Davis v. City of Cheyenne*, 2004 WY 43, ¶6, 88 P.3d 481, 484 (Wyo.2004). Similarly, the agency's conclusions of law are not entitled to deference, and the agency is affirmed only if such conclusions are in accordance with the law. *Penny v. State ex rel. Wyo. Mental Health Professions Licensing Bd.*, 2005 WY 117, ¶12, 120 P.3d 152, 160 (Wyo.2005).

[¶5] Statutory construction is a question of law that we review *de novo*. *Powder River Coal Co. v. Wyo. State Bd. of Equalization*, 2002 WY 5, ¶6, 38 P.3d 423, 426 (Wyo.2002).

> This Court considers the entire statute in determining if the language of a statute is ambiguous:
>
> > In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed in *pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is de novo. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in *pari materia*. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. *Wyoming Board of Outfitters and Professional Guides v. Clark*, 2001 WY 78, ¶12, 30 P.3d 36, ¶12 (Wyo.2001); *Murphy v. State Canvassing Board*, 12 P.3d 677, 679 (Wyo.2000). Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation. *Billis v. State*, 800 P.2d 401, 413 (Wyo.1990) (citing *McGuire v. McGuire*, 608 P.2d 1278, 1283 (Wyo.1980)).
>
> Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions. *Gray v. Stratton Real Estate*, 2001 WY 125, ¶5, 36 P.3d 1127, ¶5 (Wyo.2001); *Bowen v. State, Wyoming Real Estate Commission*, 900 P.2d 1140, 1143 (Wyo.1995).

*Loberg v. Wyo. Workers' Safety & Comp. Div.*, 2004 WY 48, ¶5, 88 P.3d 1045, ¶5 (Wyo.2004) (quoting *Board of County Comm'rs of Teton County v. Crow*, 2003 WY 40, ¶¶40–41, 65 P.3d 720, ¶¶40–41 (Wyo.2003)). Only if we determine the language of a statute is ambiguous will we proceed to the next step, which involves applying general principles of statutory construction to the language of the statute in order to construe any ambiguous language to accurately reflect the intent of the legislature. If this Court determines that the language of the statute is not ambiguous, there is no room for further construction. We will apply the language of the statute using its ordinary and obvious meaning.

*BP Am. Prod. Co. v. Wyo. Dep't of Revenue*, 2005 WY 60, ¶15, 112 P.3d 596, 604 (Wyo.2005).

## FACTS

[¶6] Rio Tinto Energy America, Inc., formerly Kennecott Energy Company (Rio Tinto), operates two coal mines—Caballo Rojo and Cordero—in Campbell County, Wyoming. After an audit covering the tax years 1999, 2000, and 2001, the Wyoming Department of Audit concluded that Rio Tinto had undervalued its production at both mines for tax years 1999 and 2000, but that it had overvalued production for tax year 2001. The Wyoming Department of Revenue, in reassessing severance taxes owed to the State of Wyoming, offset the underpayments and

overpayments in accordance with Wyo. Stat. Ann. § 39–14–108(c)(i), and then charged Rio Tinto the balance of the underpaid taxes and interest accrued thereon. Rio Tinto paid the taxes and interest to the State.

[¶ 7] Subsequently, the Department of Revenue certified to Campbell County notices of the valuation changes for the three tax years. The Campbell County Treasurer then issued tax notices to Rio Tinto for the additional *ad valorem* taxes and interest due to the County. In calculating interest, however, the County Treasurer did not credit the 2001 overpayment against the 1999 and 2000 underpayments, under the theory that the statute contemplated netting overpayments and underpayments during an audit period *only between mines for the same tax year, and not between tax years.* Rio Tinto paid the tax due to the County, but contested the interest and sought review by the Board of County Commissioners. The Board voted to approve the calculations made by the County Treasurer. Rio Tinto filed in the district court a Petition for Review of Administrative Action and, on January 30, 2008, the district court reversed the Board's decision. This appeal followed.

## DISCUSSION

[¶ 8] Before we evaluate the statutory language at issue, we will present, in simplified terms, the positions of the parties. For simplicity's sake, we will ignore the payment due dates established by Wyo. Stat. Ann. § 39–14–107(b)(ii) (LexisNexis 2007). Wyo. Stat. Ann. § 39–14–108(c)(iii) (LexisNexis 2007) sets interest on unpaid *ad valorem* taxes at 18% per annum "until paid or collected."

[¶ 9] The County Treasurer would apply the statute by assessing interest on the 1999 underpayment from the due date until paid, would assess interest against the 2000 underpayment from the due date until paid, and would remit to Rio Tinto the 2001 overpayment upon receipt of notice from the Department of Revenue of the overpayment. This remittance would be in the form of a rebate

check, and would have no effect on the interest accrued during the audit period in which the overpayment occurred. The County Treasurer asserts that overpayments may only be credited between mines within the same tax year.

[¶ 10] Rio Tinto, on the other hand, would apply the statute by assessing interest on the 1999 underpayment from its due date and interest on the 2000 underpayment from its due date until receipt of notice of the 2001 overpayment, at which time it would subtract the overpayment from the total and assess interest only on the balance due from that point. Rio Tinto asserts that the statute clearly mandates that any overpayment during the audit period must be credited against any deficiency, across tax years and for both mines.

[¶ 11] The district court's decision letter is premised upon a conclusion that Wyo. Stat. Ann. § 39–14–108(c)(i) is unambiguous. We agree. The unequivocal mandate of the statute is that a net deficiency be computed, and that any offsetting credit be subtracted in determining the net deficiency for computing interest during the audit. This audit took place in 2005, and it covered the tax years of 1999, 2000, and 2001. The total deficiency for the audit period should have been calculated using the underpayment for tax year 1999 with 18% annual interest thereon from the due date, plus the underpayment for the tax year 2000 with 18% annual interest thereon from the due date. The overage credit for tax year 2001 should have been subtracted from the sum of those two deficiencies on the date it came due, leaving the net underpayment against which future interest was then to be calculated.

[¶ 12] This is the only reading of the statute that gives effect both to its requirement for the determination of a net deficiency, and for its requirement that any offsetting credit be subtracted if "within the scope of the audit period." The deficiency at the end of tax year 1999 was the amount of the underpayment, plus accrued interest.[1] The defi-

---

1. It is possible for interest to accrue on a deficiency during the tax year in which it becomes

due because, as mentioned, *ad valorem* taxes are due more than once during the year (*see supra*

ciency at the end of tax year 2000 was the amount of the total deficiency from the previous year and interest accrued thereon in 2000, plus the new underpayment with accrued interest. The overpayment in 2001 should have been subtracted from the total deficiency, and interest should have continued to accrue on that new number until payment. The County Treasurer's reading of the statute does not give effect to its plain meaning because it fails to deduct the credit to reach a "net" deficiency. If the legislature intended to limit overpayment credits to different mines during the same year, and to disallow overpayment credits between years, it would have said so. Language to that effect does not appear in the statute and it is not appropriate for us to supply it.

## CONCLUSION

[¶ 13] The district court correctly applied Wyo. Stat. Ann. § 39–14–108(c)(i) to require the Campbell County Treasurer to determine Rio Tinto's net *ad valorem* tax deficiency for the audit period by subtracting a 2001 overpayment credit from the gross deficiencies for 1999 and 2000.

[¶ 14] We affirm and remand to the district court for further remand to the Board of County Commissioners to apply the 2001 offsetting overvaluation credit in determining Rio Tinto's net deficiency in a manner consistent herewith.

¶ 8). Interest accrues on unpaid balances from the due date, which is not necessarily the end of    the tax year.