2009 WY 63

Rebecca J. LUHM, Appellant (Plaintiff),

v.

BOARD OF TRUSTEES OF HOT SPRINGS COUNTY SCHOOL DISTRICT NO. 1, Appellee (Defendant).

No. S–07–0227.

Supreme Court of Wyoming.

May 12, 2009.

Representing Appellant: Patrick E. Hacker, Gregory P. Hacker, Erin M. Kendall of Patrick E. Hacker, P.C., Cheyenne, Wyoming. Argument by Patrick E. Hacker.

Representing Appellee: Tracy J. Copenhaver of Copenhaver, Kath, Kitchen & Kolpitcke, LLC, Powell, Wyoming. Argument by Mr. Copenhaver.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶1] Rebecca J. Luhm worked for the Board of Trustees of Hot Springs County School District No. 1 (the School District) as a guidance counselor. In 2006, Luhm filed a complaint alleging the School District terminated her from her job with the School District in a manner that violated law. Luhm contended she was a "teacher" as defined by the Wyoming Teacher Employment Law (WTEL), Wyo. Stat. Ann. §§ 21–1–101 through 114 (LexisNexis 2007), and thus was entitled to its protections. Luhm claimed that her termination was contrary to the spirit and the letter of the WTEL. She sought declaratory relief, asking that the district court declare her to be a continuing contract teacher under state law. Both parties filed motions for summary judgment. The district court granted summary judgment in favor of the School District and denied Luhm's motion for summary judgment. We affirm.

## ISSUES

[¶2] Luhm raises these issues:

1. Was Rebecca Luhm a "teacher" as defined in W.S. § 21–7–102(a)(vii)?

2. May a school district defeat the statutory protections of the Wyoming Teacher Employment Law by requiring forms of contract that are inconsistent with the statutes?

3. May a court judicially amend the Wyoming Teacher Employment Law to narrow the scope of persons protected, in contravention of the statutes?

4. Were there material issues of fact precluding summary judgment?

5. Did the [school] district's refusal to treat Rebecca Luhm as a continuing contract teacher deny her statutory and due process rights?

The School District presents this view of the issues:

1. Was Rebecca Luhm, who was at all times employed as a social worker and

guidance counselor, required to be given continuing contract teacher status?

2. Was the [school] district required to give Rebecca Luhm a hearing when her contract was terminated as a result of a financial need to reduce the number of staff employed by Hot Springs County School District No. 1?

3. Are there other reasons in the record for affirming the district court's summary judgment in favor of [the school district]?

## FACTS

[¶ 3] Luhm began working for the School District in 1990. On November 20, 1990, she entered into the following contract with the School District:

### OFFICE OF THE SUPERINTENDENT

### HOT SPRINGS COUNTY SCHOOL DISTRICT NO. 1

### THERMOPOLIS, WYOMING

#### Non–Teaching Contract

THIS AGREEMENT, entered into this 20th day of November, 1990, between the Board of Trustees of Hot Springs County School District No. 1 in the County of Hot Springs and State of Wyoming, and Rebecca Luhm a qualified certified employee of said County.

WITNESSETH: That the said Rebecca Luhm agrees to accept and fulfill the position of Social Worker in the Hot Springs County School District No. 1 in a faithful and efficient manner for the term of 125 days commencing on the 19th day of November, 1990, and agrees further that the Superintendent or Board of Trustees may assign extra-curricular activities and/or other subjects than that herein named; and agrees to keep herself qualified, and agrees in all things to observe the rules and regulations of the Board of Trustees of Hot Springs County School District No. 1.

IN CONSIDERATION WHEREOF, said Board of Trustees, Hot Springs County School District No. 1, agrees to pay said employee the sum of eighteen thousand one hundred thirty four and 32/100 dollars ($18,134.32). Payment shall be made for said services in nine equal installments, the first payment of $2,014.88 to be made on December 15th, and the remaining payments of $2,014.93 to be made on the 15th day of each succeeding calendar month except that June, July, and August salary will be paid in full the last working day of this school year.

PROVIDED, that in case said Rebecca Luhm shall be discharged for sufficient cause by the Board of Trustees, Hot Springs County School District No. 1, or shall have her certificate annulled, she shall not be entitled to any compensation from and after such dismissal or annulment, but shall receive her proportionate share of the June, July, and August salary based on the number of days actually worked.

ALL REQUIREMENTS for certification in the State of Wyoming are the sole responsibility of the applicant. According to State Law, a certified employee cannot be paid unless proper certification has been obtained.

THE EMPLOYEE may for any reason elect not to extend the contract or enter into a new contract for any term beyond that set forth above, and likewise the school district may elect for any reason not to extend the contract or renew the contract for any term. This is a non-teaching contract and will not provide continuing contract status to the employee named herein.

THIS EMPLOYEE'S CONTRACT embodies the entire agreement and contract between the undersigned parties, and each agrees that there are no representations, conditions, or agreements, oral or otherwise, not contained herein or modifying the terms of this contract.

IN WITNESS WHEREOF, we have hereunto subscribed our names this 20th day of November, 1990.

[¶ 4] Luhm signed contracts that were the same, or similar enough to be considered the same, over the succeeding years through the year 2002. As can be ascertained from

the above contract, she was at first hired as a "social worker," and that assignment was expressed in later contracts as "M.S. social worker" and later yet as "guidance counselor."

[¶ 5]  In a letter dated February 11, 2003, the Superintendent of Schools informed Luhm:

> It is with regret that I inform you that you will not be provided a contract for the 2003–04 school year.  Because expenditures have exceeded revenues, the Board is taking action to reduce expenses.  Unfortunately, staffing positions have been cut.
>
> The board members indicated that the staffing decisions were difficult to make, and it was with regret that this action had to be taken.
>
> If there is any way that the central office staff may be of assistance to you as you prepare to leave the district in the spring, please feel free to call upon us.  We wish you well in the future.

[¶ 6]  Luhm requested a hearing, and the School District denied that request on the basis that she had no contractual or statutory right to a hearing.  Luhm then filed the instant action in district court.  Luhm's claims included an assertion that the School District's termination of her employment was contrary to state law and school board policy.  She claimed she was denied due process of law because the school board refused to give her a hearing.  She also sought relief under the Uniform Declaratory Judgments Act in the form of a declaration that she was both a "teacher" and "a continuing contract teacher" under Wyoming law.  The district court granted the School District's motion for summary judgment and denied Luhm's motion for summary judgment.

## DISCUSSION

### General Law

[¶ 7]  In reviewing a trial court's entry of summary judgment, we examine the record in the light most favorable to the nonmoving party, giving that party all reasonable inferences that can fairly be drawn from the record.  Summary judgment is proper only when no genuine issues of mate-

rial fact exist and the prevailing party is entitled to judgment as a matter of law.  A genuine issue of material fact is a disputed fact that, if proven, would establish or refute an essential element of a cause of action or a defense raised by the parties.  For a summary judgment motion to be successful, the movant must make a prima facie showing that no genuine issue of material fact exists.  The burden thereafter shifts to the opposing party to demonstrate the existence of a genuine issue of material fact.  Moreover, this Court evaluates the propriety of summary judgment using the same standards and materials used by the district court, affording no deference to the district court's decision on issues of law.  A grant of summary judgment may be affirmed on any proper legal grounds supported by the record.  *Wells v. Bd. of Trustees of Laramie Cty. Sch. Dist. No. 1*, 3 P.3d 861, 864 (Wyo.2000).

### Issue 1:  Was Luhm a "teacher" as defined by the WTEL?

[¶ 8]  Since Luhm is unambiguously not a teacher by contract, the question becomes whether she is a teacher by statute.  We construe statutory language as follows:

> In interpreting statutes, our primary consideration is to determine the legislature's intent.  All statutes must be construed in pari materia and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony.  Statutory construction is a question of law, so our standard of review is de novo.  We endeavor to interpret statutes in accordance with [the] legislature's intent.  We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.  We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in pari materia.  When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction.  We must not give a statute a meaning that will

nullify its operation if it is susceptible of another interpretation. Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions.

*Jenkins v. State ex rel. Wyoming Workers' Safety & Comp. Div.,* 2007 WY 39, ¶ 6, 153 P.3d 271, 273 (Wyo.2007).

▬ A "teacher" is defined by the WTEL as "[a]ny person employed under contract by the board of trustees of a school district as a certified professional employee." Wyo. Stat. Ann. § 21–7–102(a)(vii) (Lexis-Nexis 2007). Luhm's argument is simple. Luhm is certificated by the Professional Teaching Standards Board (PTSB). She argues she therefore qualifies as a "certified professional employee," making her a de jure teacher. We find the construction of the definition of "teacher" under the WTEL slightly more complex.

▬ [¶ 10] The language of the WTEL must be read *in pari materia* not only with its own provisions but also with the provisions of the Wyoming Education Code of 1969 (Wyo. Stat. Ann. §§ 21–1–101 through 21–13–721 (LexisNexis 2007)). *State ex rel. Wyoming Dept. of Revenue v. Hanover Compression,* LP, 2008 WY 138, ¶ 8, 196 P.3d 781, 784 (Wyo.2008) (this Court considers and construes all statutes relating to the same subject or having the same general purpose in harmony); *Bd. of Cty. Comm'rs of Campbell Cty. v. Rio Tinto Energy America, Inc.,* 2008 WY 139, ¶ 5, 196 P.3d 791, 793 (Wyo. 2008). When so read, we believe it apparent that the WTEL requires all teachers to be certified professional employees but does not envisage that all certified professional employees be considered teachers. To construe

the WTEL definition of "teacher" otherwise would run counter to numerous provisions of the Education Code.

[¶ 11] When reviewing the Education Code as a whole we find several provisions recognizing a distinction between teachers and other certified professional employees. For instance, school boards are entrusted with the power to hire a school superintendent, principals, teachers, other certified professional employees, and other personnel. Wyo. Stat. Ann. § 21–3–111(a)(vi) (LexisNexis 2007).[1] The PTSB promulgates rules and regulations "[f]or the certification of school administrators, teachers *and other personnel.*" Wyo. Stat. Ann. § 21–2–802(a)(i) (LexisNexis 2007) (emphasis added). In reporting salaries a school district board of trustees must individually categorize salaries:

Each individual annual gross salary shall be identified by category and each individual salary shall be published as a gross dollar amount without identification other than by category. Categories shall include superintendent, assistant superintendent, high school principal, assistant high school principal, junior high principal, junior high assistant principals, elementary principals, elementary assistant principals, first grade teachers, second grade teachers, third grade teachers, fourth grade teachers, fifth grade teachers, sixth grade teachers, kindergarten teachers, high school departmental teachers (business, language arts, foreign languages, science, social studies, mathematics, or other), vocal music, instrumental music, elementary music, secondary art, elementary art, secondary physical education, elementary physical education, vocational education, secondary guidance counselors, secondary librarians, elementa-

1. Wyo. Stat. Ann. § 21–3–111(a) states in pertinent part:

(a) The board of trustees in each school district within the state may:

* * * *

(vi) Employ and determine the salaries and duties of:

(A) A superintendent of schools who shall be the chief administrative officer of the district;

(B) Principals who shall assume the administrative responsibility and instructional leadership of any schools to which they are assigned in accordance with policies adopted by the board of trustees, provided that in the event a

superintendent of schools shall request recommendations from a principal concerning the suspension, dismissal, assignment, transfer or termination of any teacher employed in the school to which the principal is assigned, such recommendation shall be given only after periodic evaluation of the teacher's classroom performance;

(C) Teachers who shall provide the expertise in their areas of instruction;

(D) Other certified professional employees; and

(E) Other personnel[.]

ry librarians, driver education, special education teachers, remedial teachers, nurses, teacher's aides, head coaches, assistant coaches, dramatics, secondary secretarial, junior high secretarial, elementary secretarial, business managers, janitorial, bus drivers, and other categories which may be selected so that every individual salary may be categorized.

Wyo. Stat. Ann. § 21–3–110(a)(ii)(A) (LexisNexis 2007). All these provisions make clear that there are more certified professional employees of a school district than just teachers. Indeed, this is made even more apparent when one considers the composition of the PTSB. The PTSB is comprised of, among others:

Six (6) certified public school employee members, two (2) of which shall be classroom teachers in grades kindergarten through six (6), three (3) of which shall be classroom teachers in grades seven (7) through twelve (12) and *one (1) of which shall be a certified professional employee not assigned to classroom teaching but providing auxiliary professional services such as librarian, guidance counselor or educational diagnostician* [.]

Wyo. Stat. Ann. § 21–2–801(a)(i) (LexisNexis 2007) (emphasis added). This provision expressly considers a guidance counselor a certified professional employee, but not a teacher.

[¶ 12] So what exactly does the WTEL mean when it defines "teacher" as "any person employed under contract by the board of trustees of a school district as a certified professional employee." To focus solely on the second part of the definition would nullify the distinctions between teachers and other certified professional employees contained in the above mentioned statutes. Instead, it must not be forgotten that the definition is for the term "teacher," which imposes some inherent limitations.

[¶ 13] In *Seyfang v. Board of Trustees of Washakie County Sch. Dist. No. 1,* 563 P.2d 1376 (Wyo.1977), the Court considered the reach of the WTEL definition of "teacher." Seyfang, a school superintendent, sought to be considered a "teacher" as defined by the WTEL. As required, he was certificated for the position of superintendent. Similar to Luhm's instant argument, Seyfang argued that, since he was a certified professional employee he fit the definition of a "teacher." The *Seyfang* Court disagreed. After conducting a statutory analysis similar to what we have just done, the Seyfang Court determined that the term "teacher" as used in the WTEL was limited to certified professional employees who were actually engaged in the teaching profession. Since the function of supervising is demonstrably different than the function of teaching, the *Seyfang* court determined Seyfang was not a teacher as contemplated by the WTEL.

[¶ 14] The holding's logic applies equally here. The term "teacher" under the WTEL envisages certified professional employees engaged in the teaching profession. The question then becomes whether Luhm was actively involved in teaching as commonly understood. Looking first to her PTSB certificate, it carries the endorsements "Counselor K–12" and "School Social Worker K–12." In contrast, other PTSB certificates hold endorsements such as "English," "World History," "United States History," and "Art K–12." The obvious difference is guidance counseling and social work are not subjects taught to students.

[¶ 15] Luhm argues that, factually, her job responsibilities were those of a teacher. Since this was summary judgment, we give Luhm the benefit of all reasonable inferences. Besides advising students on personal matters, Luhm claims she taught social skills and study skills to groups, sometimes in a classroom setting. Luhm further claims she was paid on the teacher salary schedule and was referred to as a teacher on many evaluation forms and professional development plans. She also performed other duties required of teachers, including bus duty and lunch duty, and working at school sporting events. The problem is nothing mentioned by Luhm involves teaching students a specific recognized academic subject. Consequently, there is no question of material fact. Luhm's actual day-to-day activities do not fit within the definition of a "teacher" as contemplated by the WTEL.

## CONCLUSION

[¶ 16] We certainly do not wish to make light of the importance of advising students on personal, social, academic and vocational matters, but such functions do not fit within the commonly understood meaning of teaching. Rather, we agree that a guidance counselor is not a teacher but rather a certified professional employee who provides auxiliary professional services. *See* Wyo. Stat. Ann. § 21–2–801(a)(i) (quoted supra). Luhm, certificated as a guidance counselor and social worker, is not a teacher within the meaning of the WTEL and is therefore not entitled to its protections. As such, all other issues advanced by Luhm are moot. Affirmed.

HILL, Justice, dissenting, with whom KITE, Justice, joins.

[¶ 17] I respectfully dissent because I do not agree with the majority that the district court was correct in determining that there were no genuine issues of material fact at large in this case. Furthermore, I do not agree that Mrs. Luhm was not a "teacher," as that word is used in Wyo. Stat. Ann. § 21–7–102(a)(vii), as a matter of law.

[¶ 18] The majority concludes that Luhm is "unambiguously not a teacher by contract." I do not believe that issue can be dismissed quite so lightly. The contract she was offered described the position as a "Non–Teaching Contract." However, the evidence she offered in support of her resistance to the School District's motion for summary judgment could fairly be read by a reasonable "fact finder" to have been a "conclusion about," and not a "description of," the work actually contemplated by the contract and actually assigned to her under that contract (and which, in effect, exacted a waiver from Luhm of the protections of the WTEL, in exchange for the contract, a strategy which is generally rejected by applicable case law).

[¶ 19] Luhm was certified by the Wyoming Professional Teaching Standards Board. I do not disagree that statutes relating to the same subject are generally read *in pari materia*, but in my view the most that can be said about § 21–2–801 is that it recognizes "classroom teachers" as a subset of "teachers," and that circumstance does not serve to advance an argument that only "classroom teachers" are "teachers." Likewise, I simply cannot accept the leap in logic that "classroom teaching" includes only "traditional academic" subjects. I can find nothing in the statutes that justifies the boundaries of "teacher" as set by the majority opinion. The recitation of Wyo. Stat. Ann. § 21–3–110(a)(ii)(A) (duties of boards of trustees), used by the majority to delimit the statutory definition of "teacher" is, at best, a debasing of the *in pari materia* rule.

[¶ 20] The majority also treats this statutory provision as specifically denying "guidance counselors" the status of teacher:

(a) The Wyoming professional teaching standards board is created to consist of thirteen (13) members appointed by the state superintendent as follows:

(i) Six (6) certified public school employee members, two (2) of which shall be classroom teachers in grades kindergarten through six (6), three (3) of which shall be classroom teachers in grades seven (7) through twelve (12) and **one (1) of which shall be a certified professional employee *not assigned to classroom teaching* but providing auxiliary professional services such as librarian, guidance counselor or educational diagnostician;** [Emphasis added.]

Wyo. Stat. Ann. § 21–2–801(a)(i) (LexisNexis 2007).

[¶ 21] In my view, the most that provision does is to disqualify Luhm from being on the board because she was an auxiliary professional service provider **who was assigned to classroom teaching.** Furthermore, it announces the very real possibility that certified professional employees may be (and in fact are in some districts) assigned to serve as a "teacher" in a "classroom" setting and/or a "non-classroom" setting.

[¶ 22] Finally, the majority hangs its hat on a conclusion that Luhm did not teach a "specific recognized academic subject." Wyo. Stat. Ann. § 21–9–101 (LexisNexis 2007) (Courses of Study) provides:

(b) Each school district within the state shall provide educational programs sufficient to meet uniform student content and performance standards at the level established by the state board of education in the following areas of knowledge and skills:

(i) Common core of knowledge:

(A) Reading/language arts;

(B) Social studies;

(C) Mathematics;

(D) Science;

(E) Fine arts and performing arts;

(F) Physical education;

(G) Health and safety;

(H) Humanities;

(J) Career/vocational education;

(K) Foreign cultures and languages;

(M) Applied technology;

(N) Government and civics including state and federal constitutions pursuant to W.S. 21–9–102.

(ii) For grades one (1) through eight (8), reading, writing and mathematics shall be emphasized under the common core of knowledge specified under paragraph (b)(i) of this section;

(iii) Common core of skills:

(A) Problem solving;

(B) Interpersonal communications;

(C) Keyboarding and computer applications;

(D) Critical thinking;

(E) Creativity;

(F) Life skills, including personal financial management skills.

[¶ 23]   An examination of an accepted definition of "academic" readily demonstrates that that word does not, and should not, play a role in further describing the meaning of "teacher" as set out in the governing statute. *Webster's Third New International Dictionary*, "academic" 9 (1986); and see, 1 *Roget's International Thesaurus*, § 563 "TEACHER" (1970).

[¶ 24]   For the reasons summarized above, I would reverse the district court's summary judgment order and remand this matter to the district court for full development of a trial record.