2010 WY 12

**Latasha M. BOYER–GLADDEN, Appellant (Plaintiff),**

v.

**Deputy Sheriff Bill HILL, and Danny Glick, Sheriff of Laramie County Wyoming in his Official Capacity, Appellees (Defendants).**

No. S–09–0102.

Supreme Court of Wyoming.

Feb. 9, 2010.

Representing Appellant: Bernard Q. Phelan, The Phelan Law Firm, Cheyenne, Wyoming.

Representing Appellee Bill Hill: Kay Lynn Bestol of Sundahl, Powers, Kapp & Martin, LLC, Cheyenne, Wyoming.

Representing Appellee Danny Glick: Nancy D. Freudenthal and Mark Stewart of Davis & Cannon, LLP, Cheyenne, Wyoming; and Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General. Argument by Ms. Freudenthal and Mr. Racines.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1]   The appellant claims that, while she was a pretrial detainee in the Laramie County Detention Facility, she was sexually assaulted by a detention deputy. She sued both the deputy and the sheriff who employed him, alleging assault and battery, intentional infliction of emotional distress, negligent failure of the sheriff to supervise the deputy, and deprivation of her civil rights under 42 U.S.C. § 1983 (2003). She now appeals from the district court orders granting summary judgment both to the deputy and to the sheriff on all causes of action.

[¶ 2]   We affirm in part and reverse in part.

## ISSUES

[¶ 3]   The parties' disjunctive identification of the appellate issues in their respective briefs not being conducive to structured analysis, we will restate the issues as follows:

1.   Did the district court appropriately grant summary judgment against the appellant on the Wyoming Governmental Claims Act claim?

2.   Did the district court appropriately grant summary judgment to the deputy on the state law tort claims?

3.   Did the district court appropriately grant summary judgment to the deputy on the federal civil rights claim?

4. Did the district court appropriately grant summary judgment to the sheriff on the state law tort claims?

5. Did the district court appropriately grant summary judgment to the sheriff on the federal civil rights claim?

## FACTS

[¶ 4]   The undisputed material facts relevant to this appeal are not many.  On November 9, 2004, the appellant was a pretrial detainee incarcerated in the Laramie County Detention Facility.  While she was mopping the floors in the "pod" that evening, she was sexually assaulted by a detention deputy.[1]  Upon learning about the sexual assault, the sheriff suspended, and then terminated, the deputy's employment on the ground that sexual contact between inmates and detention deputies violated the policies of the sheriff's office.

## STANDARD OF REVIEW

[¶ 5]   Summary judgments are governed by W.R.C.P. 56(c):

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

A district court's summary judgment ruling is reviewed *de novo*, using the same materials and following the same standards as the district court.  The evidence is considered from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.

The summary judgment movant bears the initial burden of establishing a *prima facie* case for summary judgment by showing that no genuine issue of material fact exists and that judgment should be granted as a matter of law.  He must present admissible evidence to meet his burden.

If the party seeking summary judgment carries his burden, the opposing party must present specific facts to demonstrate a genuine issue of material fact exists. . . .

After a movant has adequately supported the motion for summary judgment, the opposing party must come forward with competent evidence admissible at trial showing there are genuine issues of material fact.  The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings[ ], and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden.

The evidence opposing a prima facie case on a motion for summary judgment must be competent and admissible, lest the rule permitting summary judgments be entirely eviscerated by plaintiff's proceeding to trial on the basis of mere conjecture or wishful speculation.  Speculation, conjecture, the suggestion of a possibility, guesses, or even probability, are insufficient to establish an issue of material fact.

*Alloway v. RT Capital, Inc.*, 2008 WY 123, ¶¶ 5–8, 193 P.3d 713, 715–16 (Wyo.2008) (internal citations and quotation marks omitted).  In reviewing the grant of a summary judgment, we do not defer to the district court as to issues of law.  *Luhm v. Bd. of Trs. of Hot Springs County Sch. Dist. No. 1*, 2009 WY 63, ¶ 7, 206 P.3d 1290, 1294 (Wyo. 2009).  We may affirm a grant of summary judgment on any proper legal basis supported by the record.  *Id.*

## DISCUSSION

*Did the district court appropriately grant summary judgment against the appellant on the Wyoming Governmental Claims Act claim?*

[¶ 6]   The Wyoming Governmental Claims Act (WGCA) provides at Wyo. Stat.

---

1.   The deputy admits the sexual contact, but not that it was a sexual assault.  The distinction is mainly irrelevant, inasmuch as the policies of the sheriff's office forbid sexual contact between inmates and detention officers, whether consensual or not.

Ann. § 1–39–112 (LexisNexis 2009) that "[a] governmental entity is liable for damages resulting from tortious conduct of peace officers while acting within the scope of their duties." A detention deputy is a peace officer under the WGCA. Wyo. Stat. Ann. § 1–39–103(a)(iii) (LexisNexis 2009); Wyo. Stat. Ann. § 7–2–101(a)(iv)(H) (LexisNexis 2009). To proceed under the WGCA, a claimant must present his or her claim to the governmental entity within two years of the alleged act, error or omission. Wyo. Stat. Ann. § 1–39–113(a) (LexisNexis 2009). Of particular importance in the instant case is the additional statutory mandate that an action against a governmental entity is forever barred unless it is "commenced" within one year after the date the claim was presented to the governmental entity. Wyo. Stat. Ann. § 1–39–114 (LexisNexis 2009). W.R.C.P. 3(b) defines "commenced" in the context of a statute of limitations:

(b) *When commenced.*—For purposes of statutes of limitation, an action shall be deemed commenced on the date of filing the complaint as to each defendant, if service is made on the defendant or on a co-defendant who is a joint contractor or otherwise united in interest with the defendant, within 60 days after the filing of the complaint. *If such service is not made within 60 days that action shall be deemed commenced on the date when service is made. . . .*

(Emphasis added.)

[¶ 7] The sexual assault occurred on November 9, 2004. The appellant's claim was presented to Laramie County on June 15, 2006, well within the two-year period mandated by Wyo. Stat. Ann. § 1–39–113(a).[2] The appellant filed her complaint in district court on December 22, 2006. It is significant that, while this filing occurred within the one-year limitation period of Wyo. Stat. Ann. § 1–39–114, the deputy was not served with a copy of the complaint until October 5, 2007. Consequently, pursuant to W.R.C.P. 3(b), the suit was not "commenced" until that date, which was outside the one-year statutory period. As a result, the appellant's state law tort claims against the deputy under the WGCA are time-barred, and the district court must be affirmed in that regard.[3] The appellant conceded as much below.

### Did the district court appropriately grant summary judgment to the deputy on the state law tort claims?

[¶ 8] The appellant contends vigorously on appeal that, even if dismissal of the state law tort claims under the WGCA was appropriate, those claims should survive as personal claims against the deputy.[4] Indeed,

---

2. This is the date of presentment alleged in the complaint. In his answer to the complaint, the sheriff admitted receiving a notice of claim dated May 26, 2006. No notice of claim is attached to the complaint, or appears anywhere in the record, so we are left to presume that the two references are to the same document. The sheriff does not indicate the date that he received the notice of claim, so we treat as true the allegation of the complaint that the claim was presented on June 15, 2006. We also note that Laramie County, whose liability the appellant is attempting to establish by filing a WGCA action, is not named as a defendant. Because we resolve the claim on other grounds, we will not consider that factor.

3. Our conclusion that the appellant was time-barred from filing her WGCA complaint negates any need for the Court to explore the appellees' alternative theory that the allegations of the complaint in regard to the claim were inadequate under *McCann v. City of Cody*, 2009 WY 86, 210 P.3d 1078 (Wyo.2009). *See Lankford v. City of Laramie*, 2004 WY 143, ¶¶ 23–24, 100 P.3d 1238, 1244 (Wyo.2004); and *Mountain View/Evergreen Improvement & Serv. Dist. v. Brooks Water & Sewer Dist.*, 896 P.2d 1355, 1363 (Wyo.1995).

4. The two state law tort claims made against the deputy in the appellant's complaint were (1) assault and battery, and (2) intentional infliction of emotional distress. In her brief, the appellant concedes that "the one year statute of limitation for a civil action for 'Battery' had expired at the time the complaint was filed and [she] does not appeal the [district] court's dismissal of Count One." Apparently, this concession is based upon the one-year statute of limitation for assault or battery found in Wyo. Stat. Ann. 1–3–105(a)(v)(B) (LexisNexis 2009). We will recognize and honor this concession, despite the fact that the allegation of the complaint was that the deputy "did unlawfully and intentionally assault and batter plaintiff by subjecting her to sexual intrusion," and the one-year period of limitation found in Wyo. Stat. Ann. § 1–3–105(a)(v)(B) excepts sexual assault. In any event, the only state law tort claim now at issue is the allegation of intentional infliction of emotional distress.

relying upon *Milton v. Mitchell*, 762 P.2d 372, 376–78 (Wyo.1988), the district court initially denied the deputy's motion for summary judgment on this issue on the ground that sexual assault was outside the deputy's "scope of duties." The relevant holding of *Milton* is that the WGCA and its statute of limitations apply only to allegations of conduct within the "scope of duties," as opposed to allegations of conduct within the "scope of employment." *Id.* at 378. After the publication of *Krenning v. Heart Mountain Irrigation District*, 2009 WY 11, 200 P.3d 774 (Wyo.2009), however, the district court reconsidered and granted the summary judgment motion. The district court found that, as in *Krenning*, the appellant in the instant case "has consistently pled and argued that [the deputy] was acting within the course and scope of his duties," and that the WGCA and its statute of limitations were applicable. Having reviewed the complaint filed in this matter, we find the latter conclusion of the district court to be correct as it applies to the only state law tort claim appealed, that being the claim for intentional infliction of emotional distress, and we affirm the granting of summary judgment to the deputy.[5] That allegation was pled against the deputy as a WGCA claim—"while on duty as a detention officer"—and the statute of limitations governing WGCA actions was correctly applied. When a claim is pled under the WGCA, we will not speculate that the appellant also intended to plead a separate tort claim against the governmental employee. *See Krenning*, 2009 WY 11, ¶¶ 30–31, 200 P.3d at 783; *Watts v. Holmes*, 386 P.2d 718, 719 (Wyo.1963); W.R.C.P. 8(a), (e).

### Did the district court appropriately grant summary judgment to the deputy on the federal civil rights claim?

[¶ 9] The district court's resolution of this issue, and this Court's reversal of that resolution, are best understood if placed within the context of the applicable law. In the restricted sense of a "civil rights action" such as the one at hand, a "civil right" is the "enjoyment of such guarantees as are contained in constitutional or statutory law, such as the … guarantees found in particular amendments to the United States Constitution…." 15 Am.Jur.2d *Civil Rights* § 1 (2000). Adopted after the Civil War to enforce equality for former slaves, the Fourteenth Amendment has become the source of many civil rights and their protection, especially against infringement by the states. Section 1 of the Fourteenth Amendment provides as follows:

All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[¶ 10] Section 5 gives Congress the authority to enforce the Fourteenth Amendment "by appropriate legislation." Actions such as the present one have come to be called "1983 actions" because their foundation is in 42 U.S.C.A. § 1983 (2003):

*Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress,* except that in any

---

5. Neither this case nor *Krenning* should be read as an attempt to define what conduct is, or is not, within the "scope of duties" as opposed to within the "scope of employment" as those concepts are discussed in *Milton*. In regard to the present issue, both this case and *Krenning* are concerned with what was pled, rather than what was done. In the instant case, for example, the complaint alleges that the deputy "was then employed and acting as a detention officer," that the deputy acted "while on duty as a detention officer," that the deputy "act[ed] in a position of authority and threaten[ed] official punishment," and that the deputy acted "in the course of employment through the use of the power and authority given him as a detention officer."

action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

(Emphasis added.)

[¶ 11] The purpose of § 1983 is " 'to deter *state* actors from using the badge of their authority to deprive individuals of their federally guaranteed rights' and to provide related relief." *Richardson v. McKnight,* 521 U.S. 399, 403, 117 S.Ct. 2100, 2103, 138 L.Ed.2d 540 (1997) (emphasis in original) (quoting *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S.Ct. 1827, 1830, 118 L.Ed.2d 504 (1992)). 42 U.S.C.A. § 1983 is not, itself, a source of substantive rights; rather, it provides for the enforcement of rights elsewhere conferred. *Wilson v. Garcia,* 471 U.S. 261, 278, 105 S.Ct. 1938, 1948, 85 L.Ed.2d 254 (1985). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988).

[¶ 12] The concept of action performed "under color of state law" must not be confused with the question of whether a defendant is being sued in his "personal capacity" or in his "official capacity." The latter distinction was described in *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991) as follows:

In *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Court sought to eliminate lingering confusion about the distinction between personal- and official-capacity suits. We emphasized that official-capacity suits " 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Id.,* at 165, 105 S.Ct., at 3104 (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978)). Suits against state officials in their official capacity therefore should be treated as suits against the State. 473 U.S., at 166, 105 S.Ct., at 3105. Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation. See Fed.Rule Civ.Proc. 25(d)(1); Fed.Rule App.Proc. 43(c)(1); this Court's Rule 35.3. Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham, supra,* at 166, 105 S.Ct., at 3105 (quoting *Monell, supra,* 436 U.S., at 694, 98 S.Ct., at 2037). For the same reason, the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses. 473 U.S., at 167, 105 S.Ct., at 3105.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.,* at 166, 105 S.Ct., at 3105. While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. *Id.,* at 166–67, 105 S.Ct., at 3105–3106.

(Emphasis in original.)

[¶ 13] It goes without saying that the distinction between an official-capacity § 1983 action and a personal-capacity § 1983 action is significant. Questions of both potential immunity and potential liability are answered by reference to the nature of the allegations in that regard. *Id.* at 24–31, 112

S.Ct. at 361–65.[6] Although the United States Supreme Court has not directly addressed the question of the degree of specificity required when pleading personal-capacity and official-capacity actions under § 1983, it has indicated its preference for specificity, to avoid ambiguity. *Id.* at 24, 112 S.Ct. at 361.

[¶ 14] This last observation leads naturally to a discussion of the appellant's § 1983 claim in the instant case. The ambiguity of the claim left both the deputy's trial attorney and the district court unsure as to whether a § 1983 claim was even being made against the deputy. The district court eventually decided that, if such a claim was being made, it was being made against the deputy in his official capacity. Finding no evidence of a county or sheriff's office custom or policy playing any part in the deputy's transgression, the district court granted the deputy's motion for summary judgment on the § 1983 claim.

[¶ 15] We find that we must disagree with the district court on this one issue. The fact that the appellant's WGCA and state law tort claims are presented as violations occurring within the scope of the deputy's duties—no doubt to fit within the WGCA—does not automatically equate to an allegation under § 1983 that the deputy was acting in his official capacity. In fact, a close reading of the complaint's fourth cause of action strongly suggests that the appellant intended to raise an official-capacity claim against the sheriff, and a personal-capacity claim against the deputy. Under that cause of action, the appellant alleges that the sheriff acted in his official capacity, but does not allege that the deputy did so. Instead, the complaint alleges only that the deputy's actions were "accomplished under color of State law," which is the language the United States Supreme Court has said is sufficient to state a personal-capacity claim under § 1983. *Hafer,* 502 U.S. at 25, 112 S.Ct. at 362; *West,* 487 U.S. at 48, 108 S.Ct. at 2254–55. Further, the appellant also alleges that the sheriff "is the authority responsible for making official policy," which phrase rings of

an official-capacity suit, while the allegation against the deputy says nothing about policy. The "icing on the cake," perhaps, is that, in the complaint's caption, the sheriff is named as a defendant in his official capacity, while the deputy is not.

[¶ 16] We conclude that the § 1983 claim against the deputy was made in his personal capacity, rather than in his official capacity. Therefore, the summary judgment granted to the deputy on the claim must be reversed because it was based upon the district court's conclusion that there was no evidence the deputy had violated a custom or policy of the county or the sheriff's office. Such evidence is not required to show a personal-capacity violation of § 1983.

### Did the district court appropriately grant summary judgment to the sheriff on the state law tort claims?

[¶ 17] It is somewhat difficult, with any assurance of accuracy, to identify from the complaint what state law tort claims the appellant intended to allege against the sheriff. Assault and battery, and intentional infliction of emotional distress, are apparently intended to target both the deputy and the sheriff, while "failure to control detention officer," is obviously "aimed" at the sheriff. The summary judgment as to assault and battery was not appealed, so we will ignore that cause of action. As to intentional infliction of emotional distress, the complaint alleges that the deputy acted "while on duty as a detention officer in [sic] behalf of the Sheriff . . . ." Such language suggests a *respondeat superior* theory of liability, if it is meant to be an accusation against the sheriff.

[¶ 18] The third cause of action—failure to control detention deputy—is confusing in and of itself, although it is no doubt directed at the sheriff. After citing Wyo. Stat. Ann. § 18–3–603 (LexisNexis 2009), the complaint alleges the deputy's intentional sexual assault of the appellant "in the course of employment through the use of the power and authority given him as a detention officer of the

---

6. This impact on liability and immunity issues exists not just in the § 1983 action, but in underlying state tort claims. *See Kanzler v. Renner,* 937 P.2d 1337, 1344 (Wyo.1997).

Sheriff."[7] Once again, this suggests liability on the part of the sheriff under a theory of *respondeat superior,* but it is unclear that such was intended. The following paragraph, under the same cause of action, alleges that "[t]he Sheriff negligently failed to exercise reasonable care so as to control [the deputy] to prevent him from intentionally harming [the appellant]. . . ." This direct allegation of negligence against the sheriff sets forth claims of negligent hiring, negligent rulemaking, and negligent supervision.

[¶ 19] In her appellate brief, the appellant clarifies her allegations against the sheriff as follows: "The [appellant] also sued the Sheriff in his official capacity based on state law claims, assault and battery, intentional infliction of emotional distress, and breach of duty to keep the jail and prisoners safe pursuant to WYO. STAT. § 18–3–603(a)." Her argument is that the cited statute creates a nondelegable duty on the part of the sheriff to care for prisoners, and that such duty cannot be escaped by asserting that the act of the detention deputy was not authorized by the sheriff. She relies upon *Restatement (Second) of Agency* § 214 (1958), *Restatement (Second) of Torts* § 424 (1965); *McLean v. Hyland Enters., Inc.,* 2001 WY 111, ¶ 25, 34 P.3d 1262, 1269 (Wyo.2001) (employee termination); *Abeyta v. Hensley,* 595 P.2d 71, 73 (Wyo.1979) (coemployee negligence); and *Engen v. Rambler Copper & Platinum Co.,* 20 Wyo. 95, 121 P. 867, 874 (1912) (master's duty of care to servant).

[¶ 20] The district court granted summary judgment to the sheriff on the state law tort claims, after a complex analysis of nondelegable duty, statutory construction, and strict liability. We will affirm the summary judgment, but upon slightly different grounds. If Wyo. Stat. Ann. § 18–3–603 created a nondelegable duty on the part of the sheriff to care for prisoners, a question we need not answer, such was impliedly repealed by the much-later enacted WGCA. While we have repeatedly stated the general rule that statutory repeals by implication are not fa-

vored, we have also repeatedly stated just as firmly that where "the later statute is so repugnant to the earlier one that the two cannot logically stand together, or that the whole subject of the earlier statute is covered by the later one having the same object, clearly intending to prescribe the only rules applicable to the subject[,]" the former statute has been repealed. *Mathewson v. City of Cheyenne,* 2003 WY 10, ¶ 11, 61 P.3d 1229, 1233 (Wyo.2003); *see also Shumway v. Worthey,* 2001 WY 130, ¶ 15, 37 P.3d 361, 367 (Wyo.2001); *Longacre v. State,* 448 P.2d 832, 833 (Wyo.1968); *Doyle v. Schroeder,* 76 Wyo. 178, 301 P.2d 379, 380 (1956); and *State v. Cantrell,* 64 Wyo. 132, 186 P.2d 539, 542 (1947). Specifically, we have applied this latter concept to statutes impliedly repealed by enactment of the WGCA. *See Emulsified Asphalt, Inc. of Wyo. v. Transp. Comm'n of Wyo.,* 970 P.2d 858, 859, 863–64 (Wyo.1998) (later general statute intended to address entire subject of sovereign immunity repealed earlier specific statute).

[¶ 21] The WGCA, at Wyo. Stat. Ann. § 1–39–102 (LexisNexis 2009), clearly evinces the legislature's intent that the WGCA "cover the field" of sovereign immunity and liability. And under the WGCA, immunity is the rule and liability the exception, for both the governmental entity and its public employee. Wyo. Stat. Ann. § 1–39–104 (LexisNexis 2009); *Hurst v. State,* 698 P.2d 1130, 1132 (Wyo.1985). More specifically to the issues at hand, liability for the tortious conduct of peace officers may only be imposed for conduct "while acting within the scope of their duties." Wyo. Stat. Ann. § 1–39–112. In the instant case, not only is there no evidence that sexual assault of inmates was within the scope of the deputy's duties, it would be absurd to even suggest such a thing. *Kanzler v. Renner,* 937 P.2d 1337, 1345 (Wyo.1997) (sexual misconduct never within the scope of any public officer's duties). Beyond that, there is no evidence in the record that the sheriff, within the scope of his own duties, negligently hired or super-

---

7. Wyo. Stat. Ann. § 18–3–603(a) reads in pertinent part as follows:

(a) Each sheriff has charge of the jail and the prisoners therein confined in his county.

The prisoners shall be kept by the sheriff or by a deputy or detention officer appointed for that purpose, and for whose acts he and his sureties are liable. . . .

vised the deputy, or failed to enact reasonable rules for the protection of inmates. In fact, the only evidence in regard to these accusations was that sexual contact between detention deputies and inmates violated the rules of the sheriff's office, that the deputy had been trained under those rules, that the sheriff had no knowledge of the deputy's conduct until after the fact, and that the sheriff immediately suspended and then terminated the deputy's employment.

[¶ 22] In summary, neither the sheriff nor the county is liable for the tortious conduct of the deputy because that conduct did not occur within the deputy's scope of duties, and neither the sheriff nor the county is liable for the conduct of the sheriff, even though within the scope of his duties, because his conduct was not tortious.

### *Did the district court appropriately grant summary judgment to the sheriff on the federal civil rights claim?*

[¶ 23] The appellant's § 1983 action against the sheriff is an action against the sheriff in his official capacity. As stated earlier herein, such an action is treated as a suit against the county, and it requires proof that a policy or custom of the governmental entity played a part in the violation of law. *See supra* ¶ 12, *Hafer*, 502 U.S. at 25, 112 S.Ct. at 361–62. Stated otherwise, a governmental entity "cannot be held liable *solely* because it employs a tortfeasor—or in other words ... on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (emphasis in original). In more detail, the law is as follows:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 436 U.S. at 694, 98 S.Ct. at 2037–38. As the law has been further refined, a gov-

ernmental entity may only be liable under § 1983 in quite particular circumstances:

> As our § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) (emphasis in original).

[¶ 24] It is redundant at this point for us to repeat the fact that no policy or custom of the county or the sheriff has been shown to have played any role in the deputy's conduct, except insofar as it has been shown that the deputy was violating a sheriff's office policy by his conduct. The appellant's reliance upon *Skurstenis v. Jones*, 81 F.Supp.2d 1228, 1238–39 (N.D.Ala.1999), *aff'd in part and reversed in part*, 236 F.3d 678 (11th Cir. 2000), is misplaced. In that case, the court found that a sheriff could not immunize himself from § 1983 liability by arguing that a strip-search policy was not his own policy, but that of a jail contractor. Liability was based upon a policy that was, in effect, the sheriff's. That is not the case here, where no policy is involved.

[¶ 25] We will affirm the grant of summary judgment to the sheriff on the civil rights claim. The sheriff was sued in his official capacity, and there is no evidence that a custom or policy of the county or of the sheriff played any part in the alleged violation of the appellant's civil rights.

### CONCLUSION

[¶ 26] The district court appropriately granted summary judgment against the appellant on her claims under the WGCA because the Act's statute of limitations had run before the suit was commenced, which was

conceded by the appellant. The district court also appropriately granted summary judgment in favor of the deputy on the state law tort claims because (1) the appellant conceded that the statute of limitations had run on the assault and battery claim, and (2) both state law tort claims against the deputy were made under the WGCA, and were time barred by its statute of limitations. The summary judgment granted in favor of the deputy on the § 1983 action must be reversed because the cause of action was sufficiently stated against the deputy in his personal capacity, and was not intended to be an official-capacity action as was concluded by the district court. Summary judgment in favor of the sheriff was appropriate on the cause of action for intentional infliction of emotional distress, because the WGCA does not make the sheriff liable for the deputy's conduct outside the scope of the deputy's duties. Summary judgment in favor of the sheriff was appropriate on the cause of action for negligent breach of duty of care by the sheriff because there was no evidence presented that the sheriff was in any way negligent in hiring, training, or supervising the deputy. Finally, the district court appropriately granted summary judgment on the official-capacity § 1983 action against the sheriff because no evidence was presented that any policy or custom of the sheriff or the county played a role in the alleged violation of the appellant's civil rights.

[¶ 27] We affirm the ruling of the district court, with the exception of the summary judgment granted to the deputy on the § 1983 personal-capacity action, and we remand to the district court for further proceedings consistent with such ruling.

KITE, J., files a specially concurring opinion in which BURKE, J., joins.

KITE, J., specially concurring, in which BURKE, J., joins.

[¶ 28] I concur with the majority opinion, but write separately to address an issue raised by footnote 3. While the parties addressed the issue of whether the allegations in the complaint complied with this Court's jurisprudence, no argument was presented concerning whether failure to comply with the statute of limitations contained in Wyo. Stat. Ann. § 1–39–114 (LexisNexis 2009) deprives the court of jurisdiction. In *Bell v. Schell*, 2004 WY 153, ¶ 11, 101 P.3d 465, 468–69 (Wyo.2004), we set forth the analysis that should apply in determining that issue, but left it for another day. While it could be argued that the issue was determined in *Lankford v. City of Laramie*, 2004 WY 143, ¶ 22, 100 P.3d 1238, 1244 (Wyo.2004) and *Mountain View/Evergreen Improv. & Serv. Dist. v. Brooks Water & Sewer Dist.*, 896 P.2d 1355, 1363 (Wyo.1995), I would prefer to do so explicitly and after performing the analysis set forth in *Bell*. That is unnecessary, of course, in this case because there is no dispute that the plaintiff's claim is barred by her failure to file her complaint within one year of the filing of her claim as provided in § 1–39–114.